570 F.2d 867
 1978-1 Trade Cases 61,884
 J. M. DUNGAN, as Trustee for ABC Towing Service of Salinas,
Inc., a bankrupt corporation, Plaintiff-Appellant,
v.
MORGAN DRIVE-AWAY, INC., National Trailer Convoy, Inc., and
Transit Homes, Inc., Defendants-Appellees.
 No. 76-2681.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 13, 1978.
Rehearing and Rehearing En Banc Denied Feb. 28, 1978.
 
 No appearance for plaintiff-appellant.
 No appearance for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before HUFSTEDLER, SNEED and KENNEDY, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Plaintiff-appellant Dungan, as Trustee for the ABC Towing Service of Salinas, Inc., a bankrupt corporation, instituted this private antitrust treble damage action on August 20, 1975. It is acknowledged that any such action accrued no later than April 23, 1969, the date ABC Towing Service of Salinas, Inc. filed its petition in bankruptcy. The cause of action, therefore, appears barred because, as required by 15 U.S.C. § 16(i), it was not commenced "within four years after the cause of action accrued."
 
 
 2
 To avoid this conclusion plaintiff points to that portion of 15 U.S.C. § 16(a) which suspends the running of the statute of limitations during the pendency of "any civil or criminal proceeding . . . instituted by the United States" and for one year thereafter and contends that the empanelling on February 7, 1972 of the grand jury which subsequently indicted the defendant-appellees, suspended the running of limitations as of that date. This suspension, occurring within four years from the accrual date of the cause of action, should preserve the cause until the expiration of one year following the termination of the criminal proceeding. Inasmuch as these proceedings at the earliest were terminated by the appellees' entering pleas of nolo contendere and being sentenced on September 27, 1974, a complaint filed on August 20, 1975 should be regarded as well within the permissible one year.
 
 
 3
 The defendants, however, insist that the empanelling of a grand jury did not suspend the running of limitations. Only an indictment so functions and in this instance the indictment was issued on August 2, 1973, a date more than four years subsequent to the date the cause of action accrued. The cause, therefore, should be barred by limitations, the defendants contend.
 
 
 4
 Accordingly the defendants moved for summary judgment after the above facts were revealed by the complaint and developed through depositions. The motion was granted by the district court. We affirm.
 
 I.
 
 5
 Purposes Served By Tolling Provisions of 15 U.S.C. § 16(i).
 
 
 6
 Plaintiff rests his case on the purposes Congress intended to serve in enacting those provisions of the Clayton Act which now constitute 15 U.S.C. § 16(a) and (i).[1] Section 16(a) makes final judgments or decrees resulting from civil or criminal proceedings brought by the United States prima facie evidence in any action under federal law brought by a private party against the same defendant. Section 16(i), however, is not limited in scope to being only "a logical backstop for the prima facie evidence clause of 5(a) (15 U.S.C. § 16(a))" Minnesota Mining & Mfg. Co. v. N. J. Wood Finishing Co., 381 U.S. 311, 319, 85 S.Ct. 1473, 1477, 14 L.Ed.2d 405 (1965). Its purpose has been described by the Supreme Court in Minnesota Mining as follows:
 
 
 7
 Section (i) was amended in 1976 in two minor ways not relevant here, Pub.L. 94-435, Title III, § 302(2), 15 U.S.C.A. § 16(i) (1977 Supp.).
 
 
 8
 "As we have pointed out, the textual distinctions as well as the policy basis of § 5(b) indicate that it was to serve a more comprehensive function in the congressional scheme of things. The Government's initial action may aid the private litigant in a number of other ways. The pleadings, transcripts of testimony, exhibits and documents are available to him in most instances. In fact, the rules of the Commission so provide. 16 CFR § 1.132(e). See generally 16 CFR § 1.131 et seq. Moreover, difficult questions of law may be tested and definitively resolved before the private litigant enters the fray. The greater resources and expertise of the Commission and its staff render the private suitor a tremendous benefit aside from any value he may derive from a judgment or decree. Indeed, so useful is this service that government proceedings are recognized as a major source of evidence for private parties."
 
 
 9
 Minnesota Mining & Mfg. Co. v. N. J. Wood Finishing Co., supra, at 319, 85 S.Ct. at 1477. This purpose expresses a "desire that private parties be permitted the benefits of prior government actions." Id. at 320, 85 S.Ct. at 1478. Such a purpose, plaintiff insists, in this case can be served adequately only by interpreting the statutory language "Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws" as embracing the empanelling of a grand jury. Only in that manner can a private party situated as is the plaintiff here get the full benefits of the government's prior actions.
 
 
 10
 Although the plaintiff is correct in asserting that 15 U.S.C. § 16(i) serves the broad and beneficent purpose of aiding private antitrust litigants, so as to use "private self-interest as a means of enforcement" of antitrust laws, Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 751, 67 S.Ct. 1015, 1019, 91 L.Ed. 1219 (1947), it is also true that it is a statute of repose. This feature emerges clearly when one considers the purposes of the Act of July 7, 1955, 69 Stat. 282, which amended 15 U.S.C. § 16(i) (at that time numbered 16(b)). Prior to this Act § 16(i) merely suspended the running of the limitations period, the limits of which were fixed by state law. This led to considerable confusion in computing the correct period within which a suit was required to be brought.[2] To eliminate this confusion the Act established a uniform statute of limitations of 4 years and provided the suspension of the statute would extend "during the pendency" of the federal civil or criminal proceeding and "for one year thereafter." Finally, the Act provided that, in the event the new uniform 4-year statute is tolled, "any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued." In this manner the termination date of the limitations period was designed to afford private litigants an opportunity to take advantage of the government's efforts and to make its calculation reasonably certain.[3]
 
 
 11
 We, therefore, in interpreting section 16(i) must be guided by a Congressional intent not only to aid private litigants but also to make reasonably certain and predictable the determination of the duration within which a private antitrust suit must be brought. Our interpretation is important because, not only will it fix the period within which a suit may be brought, it also will affect, by fixing the duration of the period of suspension, the period of time with respect to which damages may be recoverable.
 
 II.
 
 12
 Plaintiff's Interpretation Inconsistent With Section 16(b)'s
 
 
 13
 Statute-of-Repose Purpose.
 
 
 14
 Plaintiff in effect argues that any interpretation which will extend the period within which a private suit can be brought serves to aid private litigants and is thus an interpretation intended by Congress. As indicated above, this ignores the statute-of-repose purpose of section 16(i). To serve that purpose we should eschew an interpretation which could introduce at another critical point in the calculation of the total period within which a suit may be brought a degree of uncertainty even greater than that which Congress eliminated in 1955. Plaintiff's expansive reading of Congressional intent undoubtedly would lead to just that. In calculating the expiration point of the time within which a suit may be brought, uncertainty about when suspension of the running of the four-year statute commences would be as troublesome as were the uncertainties to which the 1955 Act was addressed.
 
 
 15
 Our description of the plaintiff's argument is not a strawman we have devised to conceal the force of his position. It is true that the date of empanelling is a fixed and certain date. The difficulty with its selection is that it bears no logical relationship to an event to which we can attach the statutory language "Whenever any civil or criminal proceeding is instituted to prevent, restrain, or punish violation of any of the trust laws, . . .." Proceedings are "instituted" either before or after empanelling of the grand jury. Mere empanelling "institutes" nothing. It is either commencing the investigation, presenting to the grand jury, or returning the indictment that does that. If empanelling should be deemed meaningful only when an indictment ultimately is returned, it is the indictment which is the operative "institution" of proceedings, not the empanelling of the grand jury. To relate the date of the suspension back to the empanelling of the grand jury makes no more sense than relating it back to the date final administrative approval of the prosecution was given or any other earlier date with respect to which there exists proof that the government had determined to investigate possible antitrust violations by the defendant. On the other hand, if the date the grand jury is empanelled is deemed meaningful even if no indictment is returned then it is clear that it is merely an arbitrary date selected to signify that at some prior date the government decided to investigate the defendant for antitrust violations.
 
 
 16
 The short of the matter is that there exists little reason, other than that it fits the needs of the plaintiff's case, to accept the date of grand jury empanelling as the date suspension commences. The date of the return of an indictment fits comfortably within the statutory language while empanelling the grand jury does not. The latter is not an act having as its purpose the prevention, restraint, or punishment of violations of the anti-trust laws. The initiation of an investigation or a decision to prosecute more comfortably fits the statutory language than does empanelling the grand jury. Were we to select empanelling today, these more appropriate times would be selected tomorrow. To select either, however, would introduce great uncertainty in fixing the time at which the suspension period commences. This would frustrate the statute-of-repose purpose of section 16(i). We decline to embark on a course that could lead to such an end.
 
 III.
 
 17
 Practical Difficulties In Accepting Plaintiff's Position.
 
 
 18
 In reaching our conclusion we have also been influenced by a desire to avoid certain practical difficulties relating to grand jury secrecy which the plaintiff's position would involve. See Rule 6(e), Fed.R.Crim.P. (as amended Oct. 1, 1977). Section 16(i) suspends the limitation period "in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding . . .." To determine whether proceedings before a grand jury involved "any matter complained of" upon which a private right of action is based in whole or in part, grand jury proceedings would be required to be carefully scrutinized. Moreover, considerable judicial time would be consumed in striking the exquisite balance between serving the objects of grand jury secrecy on the one hand and those of section 16(i), as interpreted by the Supreme Court in Minnesota Mining Co., on the other. Cf. U. S. Industries, Inc. v. United States District Court, 345 F.2d 18 (9th Cir.), cert denied, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). This task would be especially difficult when no indictment of the antitrust defendant was returned. Plaintiff suggests an in camera proceeding (initiated undoubtedly in some instances by no more than uninformed suspicion) in which the trial court would sift the grand jury proceedings for "any matter complained of" on which the plaintiff's suit might be based. To an impractical degree the plaintiff's position imposes upon the trial court a highly complex and difficult task whereas that task is relatively simple so long as we adhere to the date an indictment is returned as the date criminal proceedings which suspend the 4-year limitation period commence. See State of Michigan v. Morton Salt Co., 259 F.Supp. 35, 45 (D.Minn.1966). Adherence to such a date may not eliminate all necessity to strike the exquisite balance in view of the teaching of Minnesota Mining, Inc. and Leh v. General Petroleum Corp., 382 U.S. 54, 58-59, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965); but it does confine the task to substantially more manageable proportions than would otherwise be the case.
 
 
 19
 Concerns rooted in a desire to improve judicial efficiency must occupy a low order of priority when either the commands of Congress or the insistent summons of justice so indicate; however, they occupy a high order when neither so do. This is the situation which this case presents.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 15 U.S.C. § 16(a) and (i):
 "(a) A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title.
 "(i) Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: Provided, however, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."
 
 
 [2]
 S.Rep.No. 619, 84th Cong., 1st Sess. 2 (1955), reprinted in 1955 U.S.Code Cong. & Admin.News, pp. 2330, 2331
 "As previously indicated, the antitrust laws grant to private parties the right to bring a suit for treble damages to avenge injuries suffered through violations thereof. While this is a federally accorded right of action, at the present time private treble-damage cases are governed by State statutes of limitation.
 "Under this ruling a number of anomalous situations may arise. A plaintiff located in State A who is injured by a conspiracy may find himself barred by the local statute of repose, whereas an injured party in State B, wronged by the very same collusive action, may still have a valid cause of action. While this may be unjust insofar as plaintiffs are concerned, defendants fare little better under the rule. Where conspiracies occur on a nationwide level and it is determined that the limitation law of the place of injury governs the case, a plaintiff injured in several jurisdictions is permitted to select as his forum the State with the most favorable statute. In such cases, the defendant remains in constant jeopardy until the longest period of limitations has transpired. Also adding to the confusion is the frequently present problem of a conflict of laws in determining which State statute is controlling, the law of the forum or that of the situs of the injury.
 "Even when the State whose statute of limitations is applicable has finally been ascertained, there remains still another hurdle to be overcome, namely the selection of the appropriate law of the State that governs private triple-damage proceedings. The problem is complicated in many instances by virtue of the fact that statutes of limitation must frequently be chosen from those pertaining to the ancient common-law forms of action such as trespass to persons and property, damage to property, and actions in the nature of actions on the case. In those instances where the State law has established a special statute of limitations for actions upon a liability created by statute, the selection of the proper limitation period may be immeasurably easier. Even here, however, confusion as to the correct limitation period abounds.
 "It is one of the primary purposes of this bill to put an end to the confusion and discrimination present under existing law where local statutes of limitations are made applicable to rights granted under our Federal laws. This will be accomplished by establishing a uniform statute of limitations applicable to all private treble damage actions as well as Government damage actions, of 4 years."
 
 
 [3]
 S.Rep.No. 619, 84th Cong., 1st Sess. 2 (1955), reprinted in 1955 U.S.Code Cong. & Admin.News, pp. 2330, 2332
 "This bill makes several important changes in the tolling provisions of existing law. As presently written section 5 of the Clayton Act tolls the statute of limitations with respect to private treble-damage suits during the pendency of a suit by the United States to punish or restrain violations of the antitrust laws. This period of tolling is continued by the present bill with several modifications.
 "There are many instances where the statute of limitations as to a private cause of action may nearly have expired before suit is instituted by the Government under the antitrust laws. Although the statute is tolled during the pendency of the proceedings brought by the United States, the plaintiff in a treble-damage action may find himself hard pressed to reap the benefits of the Government suit if, upon its conclusion, he has but a short time remaining to study the Government's case, estimate his own damages, assess the strength and validity of his suit, and prepare and file his complaint. To alleviate such difficulties, the present bill would extend the tolling period not only for the duration of the Government's antitrust suit, but for 1 year thereafter. This would guarantee all plaintiffs an adequate period in which to take advantage of Government antitrust proceedings."