634 F.2d 1188
 1980-81 Trade Cases 63,654
 PROGRAM ENGINEERING, INC., a corporation, Ralph B. Akins, an
individual, Plaintiffs-Appellants,
v.
TRIANGLE PUBLICATIONS, INC., a corporation, Daily Racing
Form, Inc., a corporation, Los Angeles Turf Club, a
corporation, Hollywood Turf Club, a corporation, California
Jockey Club, a corporation, Newspaper and Periodical Drivers
Local No. 921 an unincorporated association, Jack
Goldberger, Defendants-Appellees.
 No. 78-2556.
 United States Court of Appeals,
Ninth Circuit.
 Argued July 9, 1980.
Submitted July 21, 1980.
Decided Dec. 1, 1980.
Rehearing Denied Jan. 1, 1981.
 
 Maxwell P. Keith, San Francisco, Cal., for plaintiffs-appellants.
 Joseph L. Golden, Los Angeles, Cal., David H. Weinstein, Philadelphia, Pa., F. B. Yoakum, Iverson, Yoakum, Papiano & Hatch, Los Angeles, Cal., Joel Linzner, Broad, Khourie & Schulz, San Francisco, Cal., argued for defendants-appellees; Kohn, Savett, Marion & Graf, Philadelphia, Pa., Martin Glenn, O'Melveny & Meyers, Los Angeles, Cal., Eugene C. Crew, San Francisco, Cal., on brief.
 Appeal from the United States District Court for the Northern District of California.
 Before CHOY, ANDERSON and FARRIS, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 Appellants initiated a private antitrust action alleging that appellees conspired to violate and that three of the appellees did violate sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, by unfairly restraining trade and by monopolizing the national publication, for sale to the public, of information of past performances of thoroughbred race horses. The district court granted summary judgment in favor of the appellees. We affirm in part and reverse and remand in part.
 
 I. Facts
 
 2
 In 1972 Program Engineering began publishing horse racing information-linking the past performances of horses with current program information, thereby competing both with Daily Racing Form (Daily), a publisher of past performance information, and with programs sold by individual racetracks. Initially this publication was called "Super Racing Program" and then "Super Racing Guide" (Racing Guide). This publication was sold at Golden Gate Fields racetrack between February and June of 1973. By August 1973 the company was foundering.
 
 
 3
 In October 1973 Program Engineering attempted to sell the Racing Guide at Bay Meadows, a racetrack operated by California Jockey Club (CJC), but a dispute arose. On October 11, 1973 Program Engineering initiated a state court action seeking an injunction to prevent CJC from denying Program Engineering the right to compete in the marketplace. That case was settled by an agreement between CJC and Program Engineering allowing Program Engineering to sell the Racing Guide at Bay Meadows under certain conditions. About October 25 Ralph Akins (Akins), president of Program Engineering, was asked to leave Bay Meadows because of an alleged labor dispute.[1]
 
 
 4
 Akins thereafter was granted permission to give away the Racing Guide on property near Bay Meadows that was leased by Foster Restaurants (Foster Restaurant property). People receiving the Racing Guide often would leave donations. On October 31, 1973 Akins was asked to get off the property because CJC had just purchased it.[2]
 
 
 5
 Akins then obtained permission from Southern Pacific Railroad to sell the Racing Guide on a strip of land located inside the Bay Meadows racetrack (Southern Pacific property). On November 2, 1973 a representative of CJC went to Southern Pacific and, in effect, had that strip of land added to the existing Bay Meadows lease.[3] On that same day Akins was told to get off the land.
 
 
 6
 November 2, 1973 was the last day that the Racing Guide was published. Program Engineering went out of business on December 1, 1973.
 
 
 7
 On October 31, 1977 appellants Program Engineering and Akins filed a complaint against appellees Triangle Publications (Triangle), Daily (owned by Triangle Publications), Los Angeles Turf Club (LATC), Hollywood Turf Club (HTC), CJC, Newspaper and Periodical Drivers Local No. 921 (Local 921), and Jack Goldberger (Goldberger), president of Local No. 921. The complaint alleged that the appellees had conspired to restrain trade in and to monopolize the publication, for sale to the public, of information regarding past performances of thoroughbred race horses, in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. The complaint additionally alleged that Triangle and Daily used their allegedly monopolistic market positions to exclude appellants from the business of publishing horse race information for sale to the public and that CJC refused to deal with appellants.
 
 
 8
 On December 7, 1977 Triangle and Daily moved to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6). In March 1978 the district court dismissed the complaint with respect to Akins on the ground that he lacked standing to sue. The district court also found that any cause of action that accrued before October 31, 1973 was barred by the statute of limitation and limited discovery "to determining whether any overt act committed pursuant to the alleged conspiracy occurred between October 31 and December 1, 1973. Fed.R.Civ.P. 26(c)(4)."
 
 
 9
 In June 1978 Triangle, Daily, LATC, HTC, and CJC moved for summary judgment. Program Engineering responded by moving to strike those portions of the summary judgment motions relating to the issues of conspiracy and damages on the ground that those issues had been excluded from discovery by the district court's earlier order.
 
 
 10
 On July 14, 1980 the district court entered a final judgment, nunc pro tunc, as of June 30, 1978, granting summary judgment to all appellees. Program Engineering and Akins appeal.
 
 II. Akins's Standing
 
 11
 Appellants assert that Akins has standing to pursue his claim for relief not only because he was President of Program Engineering but also because he was the originator of the Racing Guide and a contracting party with Program Engineering.
 
 
 12
 To have standing to sue under the antitrust laws, an individual must be within the target area of the antitrust violation, not merely incidentally injured thereby. Perkins v. Standard Oil Co., 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969). Shareholders, officers, and employees of corporations generally do not have standing to sue; the loss of salary is "merely incidental to the alleged antitrust violation and was not within the area of the economy that the defendants should have foreseen would be affected by its violation." Solinger v. A&M Records, Inc., 586 F.2d 1304, 1311 & n.8 to 1312 (9th Cir. 1978), cert. denied, 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979); see, Bosse v. Crowell Collier and Macmillan, 565 F.2d 602 (9th Cir. 1977).
 
 
 13
 In the complaint appellants allege that the object of the conspiracy was "to eliminate the business of the plaintiff Program Engineering" (emphasis added) and that Akins was injured only because of his loss of salary. The complaint does not mention that Akins was the originator of the Racing Guide or that he had a contractual arrangement with Program Engineering. Furthermore, there are no factual allegations demonstrating that Akins was in the target area of the alleged violations or that he was injured in any way other than as an employee of Program Engineering. Thus, Akins failed to establish standing to sue, and the district court properly dismissed the complaint as to him.
 
 III. Jurisdiction
 
 14
 Appellee HTC contends that in the complaint Program Engineering failed adequately to allege that the antitrust violations affected interstate commerce. This contention is meritless.
 
 
 15
 A complaint should not be dismissed for lack of jurisdiction unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McLain v. Real Estate Board, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957)). "(T)he jurisdictional requirement of the Sherman Act may be satisfied under either the 'in commerce' or the 'effect on commerce' theory." Id. 444 U.S. at 242, 100 S.Ct. at 509. Initially a plaintiff must allege the critical relationship to interstate commerce. Id. Only if these allegations are disputed must the plaintiff submit evidence that the defendant's activity is in interstate commerce or that it has some effect on another activity in interstate commerce. Id.
 
 
 16
 The complaint herein alleges that Triangle owns Daily which publishes past performance racing information that Daily sells to the public nationally, including at appellees' racetracks. Furthermore, according to the complaint, such publication "involves a constant and continuous stream of interstate commerce ... because thoroughbreds race at tracks throughout the United States and information concerning their workouts and performances at meets in the various states are (sic) collected for use by the publishers" by means of interstate communications. These allegations are not controverted by any of the appellees.
 
 
 17
 At this stage of the proceedings there are sufficient allegations to allow Program Engineering to proceed to trial. Both racetracks and publishers of racing information, of necessity, are involved in and have some effect on the commerce of racehorses that are bred, raised, and raced throughout the United States. Unless the proof at trial establishes the contrary, the district court does not lack jurisdiction.
 
 IV. Summary Judgment
 
 18
 Program Engineering contends that summary judgment was inappropriate in this case on the grounds that discovery had been limited to the threshold issue "whether any overt act committed pursuant to the alleged conspiracy occurred between October 31 and December 1, 1973"; that there were material issues of fact; and that the statute of limitation did not commence running until Program Engineering was out of business.[4]
 
 
 19
 As a general rule summary judgment is disfavored in complex antitrust litigation, particularly where, as in a conspiracy action, extensive factual determinations must be made with respect to the issue of intent. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); Beltz Travel Service, Inc. v. International Air Transport Ass'n, 620 F.2d 1360, 1364-65 (9th Cir. 1980). Summary judgment is proper only where the moving party has shown that there is no genuine issue of material fact or where, viewing the evidence and the inferences that can be drawn therefrom in the light most favorable to the opposing party, the moving party clearly is entitled to prevail as a matter of law. See Fed.R.Civ.P. 56(c); Vaughn v. Teledyne, Inc., 628 F.2d 1214, 1220 (9th Cir. 1980); British Airways Board v. Boeing Co., 585 F.2d 946, 950-51 (9th Cir. 1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Where the moving party has met its burden, the opposing party must present specific facts demonstrating that there is a factual dispute about a material issue. Id. at 951-52.
 
 
 20
 Program Engineering did not file any affidavits or other evidence in response to the motions for summary judgment. It filed a motion to strike all portions of the motions for summary judgment that dealt with the issues of conspiracy and damages and a memorandum in opposition to the motions for summary judgment. Even though Program Engineering failed to respond properly to the motions, summary judgment may be entered against it only "if appropriate." Fed.R.Civ.P. 56(e).
 
 A. Discovery[5]
 
 21
 The district court's order of March 1978 limited discovery "to determining whether any overt act committed pursuant to the alleged conspiracy occurred between October 31 and December 1, 1973." Program Engineering argues that this order should be construed to mean "assuming arguendo that there was a conspiracy, did any overt act occur during the limitation period?" Under this interpretation the district court's inquiry on the motions for summary judgment properly should have been limited to the question of timeliness.[6] Thus, according to Program Engineering, the district court went beyond the bounds of its original order by concluding that there was no genuine issue of material fact and that appellees were entitled to judgment as a matter of law. Program Engineering contends that this conclusion was premature and that it is entitled to further discovery.
 
 
 22
 When the party opposing a motion for summary judgment cannot present "facts essential to justify his opposition" to the motion, Fed.R.Civ.P. 56(f) authorizes the party to submit an affidavit stating his reasons. The court then has the discretion to order a continuance to permit discovery. Generally where a party has had no previous opportunity to develop evidence and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment. See British Airways Board v. Boeing Co., 585 F.2d at 954; accord George C. Frey Ready-Mixed Concrete v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 555 (2d Cir. 1977).
 
 
 23
 Program Engineering did not submit any affidavits pursuant to Fed.R.Civ.P. 56(f) or move for a continuance to allow additional discovery. Nonetheless, we find that the motion to strike was sufficient to raise in the lower court the issue whether Program Engineering was entitled to additional discovery.
 
 
 24
 We find nothing to support Program Engineering's interpretation of the discovery order or to require that further discovery be allowed. The allegations of conspiracy in the complaint are mostly mere conclusory statements, enough to survive a motion to dismiss, but not enough to support the suggested construction of the district court's discovery order. With only such allegations before it and in light of the subsequent grant of summary judgment, the district court undoubtedly intended that the discovery be limited not to uncovering only overt acts committed within the statute of limitation, as appellants contend, but to uncovering overt acts "committed pursuant to the alleged conspiracy," (emphasis added) thereby allowing inquiry into the conspiracy issue, as appellees contend.
 
 
 25
 Furthermore, appellants were not prevented from pursuing full discovery during the many months preceding the order limiting discovery. Yet, they point to no information or evidence discovered during that time that even suggests an inference of a conspiracy.[7] Nor does Program Engineering state what depositions it wants to take, what other specific evidence it hopes to discover or the relevance of that evidence to its claims.
 
 
 26
 The discovery order did not mention the allegations of substantive violations, but Program Engineering also failed to explain what further discovery would reveal that is "essential to justify (its) opposition" to the motions for summary judgment on these issues. See Fed.R.Civ.P. 56(f).
 
 
 27
 Under these circumstances Program Engineering was not entitled to additional discovery before the lower court ruled on the motions. See British Airways Board v. Boeing Co., 585 F.2d at 954-55.
 
 B. Statute of Limitation
 
 28
 Under 15 U.S.C. § 15b, an antitrust action is barred unless commenced within four years after the cause of action accrued. A cause of action accrues each time a plaintiff is injured by an act of the defendants. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338-39, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971); In re Multidistrict Vehicle Pollution, 591 F.2d 68, 73 (9th Cir.), cert. denied, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979). A plaintiff need not show that the conspiracy itself occurred within the limitation period. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. at 338-39, 91 S.Ct. at 806.
 
 
 29
 Appellants have not shown that either Triangle or Daily committed the alleged substantive antitrust violations within the limitation period. In fact, appellants have alleged no acts by either after October 31, 1973. Thus, those claims were barred.
 
 
 30
 It is not disputed that while Akins was prohibited from selling at Bay Meadows, he was allowed to distribute, without selling, the Racing Guide on the Foster Restaurant property. When CJC purchased the property, however, Akins (within the limitation period) was asked to leave. It is also not disputed that within hours of the time that Akins began selling the Racing Guide on the Southern Pacific property, CJC contacted Southern Pacific about leasing the property and asked Akins to leave.
 
 
 31
 Program Engineering asserts that CJC's actions, together with the ejections of Akins, are overt acts committed with an unlawful intent pursuant to the alleged conspiracy, as well as a refusal to deal by CJC and that they were committed within the limitation period. Appellees contend that because their evidence demonstrates that these acquisitions and ejections were for legitimate business reasons, summary judgment was proper. Having established that CJC committed certain overt acts within the limitation period, the appellants could avert a summary judgment by showing that there is a genuine issue of material fact relevant to whether the acts were antitrust violations.
 
 C. Issues of Material Fact
 
 32
 "A party opposing a motion for summary judgment must introduce 'sufficient evidence supporting the claimed factual dispute * * * to require a jury or judge to resolve the parties' differing versions of the truth at trial.' ... A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co., 585 F.2d at 952 (citations omitted).
 
 1. Conspiracy
 
 33
 Once allegations of a conspiracy have been rebutted by probative evidence showing alternative, legitimate business reasons for the defendants' conduct, to avoid summary judgment the plaintiff must come forward with specific factual support for its allegations. Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 671 (9th Cir. 1980); First National Bank v. Cities Service Co., 391 U.S. 253, 280, 88 S.Ct. 1575, 1588, 20 L.Ed.2d 569 (1968). Because conspiracy is rarely susceptible of direct proof, a plaintiff must rely on circumstantial evidence. Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d at 671. Nonetheless, the evidence must be sufficient to infer an agreement among the defendants (whether express or implied) to take some concerted action. See L. Sullivan, Antitrust at 317 (1977).
 
 
 34
 Program Engineering asserts that the appellees united to destroy its business, but presents very little evidence linking the appellees together in any way.[8] In fact, Akins admitted in his deposition that he had "no direct knowledge of ... an agreement," but that he had merely a belief that one existed. Such a belief is insufficient.[9]
 
 
 35
 The appellees deny that any conspiracy exists. Legitimate business reasons were proffered for each of the allegedly conspiratorial acts. Even viewing the evidence in the light most favorable to the appellants, we cannot conclude that Program Engineering has sufficiently rebutted the appellees' evidence to raise a genuine issue of material fact. Thus, the district court properly granted the motion for summary judgment on the claimed conspiracy.
 
 2. Substantive Violations
 
 36
 "Although a company may ordinarily deal or refuse to deal with whomever it pleases without fear of violating the antitrust laws, refusal to deal which is anticompetitive in purpose or effect, or both, constitutes an unreasonable restraint of trade in violation of the Sherman Act," even when justified by a legitimate business reason. Fount-Wip, Inc. v. Reddi-Wip, Inc., 568 F.2d 1296, 1300 (9th Cir. 1978) (judgment notwithstanding verdict reversed) (citations omitted). Whether a defendant refused to deal and, if so, whether the refusal was a product of an anticompetitive motive are factual issues that should not be taken from the jury "unless 'the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict.' " Id. (citations omitted).
 
 
 37
 Here, the purchase of the Foster Restaurant property was negotiated and completed prior to October 31, 1973, and the property was well-located for expanding the available parking space for Bay Meadows. Nevertheless, Akins was forced off of the property before the deed was recorded and appellees have shown no legitimate business reason for such an immediate ouster.
 
 
 38
 The lease of the Southern Pacific property also had a legitimate basis. The Southern Pacific property was within Bay Meadows racetrack, had been used by the racetrack for many years, and was excluded from the lease apparently only through an oversight. Even Akins admitted the property was essential for CJC's operation. Additionally, there may have been a legitimate reason for ejecting Akins from the racetrack, since Local 921 (through its president Goldberger) allegedly had threatened to strike Bay Meadows if Program Engineering were allowed to sell the Racing Guide there.
 
 
 39
 Despite the apparent legitimacy of CJC's actions with respect to these two occurrences, we find that, viewing the evidence in the light most favorable to appellant Program Engineering, there is a genuine, material issue as to whether these acts were substantive violations of the antitrust laws, i. e., a refusal to deal. The timing of CJC's acts in relation to prior events and to Program Engineering's demise, raises an inference that there was such a violation. In October 1973 Akins and Program Engineering initiated their state court action against CJC on the ground that CJC had refused to allow Program Engineering access to information necessary to publish the Racing Guide and had interfered with its distribution at Bay Meadows, although the Daily Racing Form and the racetrack programs were being sold there. This suit was settled by an agreement between CJC and Program Engineering that provided that Program Engineering be allowed to sell the Racing Guide at Bay Meadows. Yet, in that same month Akins again was informed that he could not sell the Racing Guide there, this time because of an alleged labor dispute.
 
 
 40
 For no stated reason Akins was forced off the Foster Restaurant property the same day that CJC's purchase of that property was finalized. Program Engineering last printed the Racing Guide in November 1973 and shortly thereafter went out of business. These facts at least suggest that within the limitation period Program Engineering was injured by the actions of CJC and that the actions may have been motivated by an unlawful intent or may have had an anticompetitive effect. Thus, summary judgment was inappropriate on this claim for relief.
 
 V. Conclusion
 
 41
 Appellants failed to present any evidence in the lower court that Akins was in the target area of the antitrust violation or that he was injured in any way other than by his loss of salary. Thus, we affirm the district court's order dismissing the complaint as to Akins on the ground that he did not have standing to sue.
 
 
 42
 A plaintiff must have some factual basis for an antitrust action before the suit is filed; he cannot expect the discovery process to reveal evidence of a violation that he merely suspects. The evidence and inferences that may be drawn therefrom in support of appellants' contentions in this case are very weak. In fact, appellants have presented no evidence that supports their allegations that Triangle and Daily, within the statute of limitation, "used (their) monopolistic position(s) to exclude (Program Engineering) from the business of publishing horse race meeting information" or that any of the appellees conspired against Program Engineering. Thus, the order granting summary judgment is affirmed as to these claims.
 
 
 43
 We reverse as to the claim that CJC refused to deal with Program Engineering, on the ground that the issue presents a factual question that is not appropriate for summary judgment.
 
 
 44
 AFFIRMED in part and REVERSED and REMANDED in part, for further proceedings consistent with this opinion. The parties shall bear their own costs on this appeal.
 
 
 
 [1]
 The terms of the settlement agreement between Akins and CJC provided:
 Program Engineering, Inc., will be responsible for solving all of its labor problems that arise during the current meet. If at any time California Jockey Club is threatened with a strike, walk-out or direct or informational picketing by reason of the fact that Program Engineering, Inc. is on the race track premises, then in that event California Jockey Club reserves the right to exclude Program Engineering, Inc. from the premises until such labor problems are solved ... and Program Engineering, Inc. agrees to vacate the premises pending said solution.
 
 
 [2]
 CJC agreed to purchase the property on October 15, 1973. The deed was signed on October 29, 1973, and recorded on October 31, 1973
 
 
 [3]
 Akins admitted that this strip of land was "absolutely mandatory for (CJC's) continuance of operations."
 
 
 [4]
 Finding, as we do in part III.B, that within the limitation period CJC acted in such a way as to stop the sale of the Racing Guide and that the evidence of such is sufficient to preclude summary judgment on the issue of timeliness, we do not reach the issue whether the statute of limitation was tolled until Program Engineering ultimately went out of business. Cf. Hanson v. Shell Oil Co., 541 F.2d 1352, 1362 n.9 (9th Cir. 1976), (court rejects argument that damages not ascertainable until business closed), cert. denied, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977)
 
 
 [5]
 Program Engineering does not challenge the order limiting discovery. The district court properly granted Triangle's and Daily's motions to limit discovery to the threshold issue of timeliness. See Fed.R.Civ.P. 26(c)(4)
 
 
 [6]
 Under this interpretation the district court misstated the timeliness issue. Under Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338-42, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971), a plaintiff may recover for acts violating the antitrust laws that were committed before the limitation period, provided that the damages from such acts accrued and became ascertainable during the limitation period
 
 
 [7]
 It does not appear that discovery after the order was entered was in fact limited as severely as appellants' interpretation of the order would require
 
 
 [8]
 The evidence offered in support of the conspiracy that involved appellees other than CJC consists of: (1) a letter from Triangle to Golden Gate Fields (not a party in this action) regarding a possible copyright infringement by an unidentified publication; (2) the refusal of program sellers to sell the Racing Guide, allegedly at the insistence of a nonparty coconspirator; and (3) alleged conversations between Walter Annenberg, of Triangle, and Mervin LeRoy, of HTC, and between Leroy and James Kilroe, of LATC, regarding Program Engineering's access to the racetracks. Kilroe denied having any conversation concerning the alleged conspiracy
 
 
 [9]
 Appellants argue that this case falls within the Interstate Circuit, Inc. v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939), "conscious parallelism" doctrine, but have not shown that two or more appellees "acted in the same way, each aware of the other's doings"; nor have they shown any of the "plus factors" generally required under this doctrine. See L. Sullivan, Antitrust at 317 (1977)