Joseph E. CHIPANNO, Yolanda Desbrisay, Personal Representative of the Estate of Leslie O. Desbrisay, deceased, W. Harley Boatsman, and Louis Rivas, Plaintiffs-Appellants,

v.

CHAMPION INTERNATIONAL CORPORATION, a New York Corporation, Willamette Industries, Inc., an Oregon Corporation, Freres Lumber Company, Inc., an Oregon Corporation, both individually and d/b/a Freres Veneer Company, an Oregon joint venture, Defendants-Appellees.

No. 80–3533.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided March 30, 1983.

Roger Tilbury, Haessler, Tilbury & Platten, Portland, Or., for plaintiffs-appellants.

R. Alan Wight, Norman J. Wiener, Miller, Nash, Yerke, Wiener & Hager, Karen K. Creason, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for defendants-appellees.

Before BROWNING, Chief Judge, WALLACE and BOOCHEVER, Circuit Judges.

BROWNING, Chief Judge:

The district court dismissed plaintiffs-appellants' antitrust treble damage action on the grounds that the statute of limitations barred a portion of the claim and plaintiffs lacked standing to sue on the remainder. We reverse.

## I.

Plaintiffs' complaint alleged defendant-appellees, who were engaged in the lumbering and milling business in Oregon, entered into a combination and conspiracy to restrain trade and commerce in timber, logs, and other forest products, the substantial terms of which were:

(a) To eliminate competitive bidding for United States Forest Service and other timber;

(b) To allocate United States Forest Service and other timber among themselves;

(c) To fix, reduce, and stabilize the price paid for United States Forest Service and other timber at or near the minimum acceptable bid set by the United States Forest Service;

(d) To bid up any non-conspirator who attempted to bid on United States Forest Service and other timber;

(e) To allocate geographical areas among themselves for buying timber and logs from private landowners, and thus make it difficult for private landowners to receive a fair price for their timber.

The effects of the conspiracy were alleged to have been to eliminate competition and reduce prices paid for Forest Service timber and consequently all timber within the State of Oregon; to prevent sellers of timber such as plaintiffs from selling timber at competitive prices; and to eliminate plaintiffs as a source of logs.

The complaint alleged that in February 1973 plaintiffs acquired an option to purchase certain timber lands in Oregon. The option was to expire May 3, 1973. Plaintiffs intended to finance the purchase by selling timber from the land. As a result of defendants' conspiracy, plaintiffs were prevented from selling the timber at competitive prices. They were forced to relinquish their interest in the property, losing anticipated profits from the sale of the timber and $35,000 in earnest money.

Plaintiffs' complaint was filed November 6, 1979. Since plaintiffs allegedly lost their option May 3, 1973, the four-year limitations period established by 15 U.S.C. § 15b, had expired unless tolled. Plaintiffs alleged the running of the limitations period was suspended pursuant to 15 U.S.C. § 16(i) because their complaint was based in part upon facts alleged in prior civil and criminal proceedings instituted by the United States.[1] *See United States v. Champion*

---

1. 15 U.S.C. § 16(i) provides:

   Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of

*International Corp.*, Crim. No. 74–183 (D.Or.1975) and *United States v. Champion International Corp.*, Civ. No. 74–698 (D.Or. 1981).

Within a month of the filing of the complaint three of the four defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12 on the grounds that the suit was barred by limitations and that plaintiffs lacked standing. The motion also asked the court "to examine into the certificate of the attorneys filing the complaint that there is good ground to support it and that it is not interposed for delay, and, if such certificate is found to be false, to strike the complaint as sham and false." These three defendants requested a stay of discovery pending filing of a Rule 11 certificate. Fed.R.Civ.P. 11. The fourth defendant filed a motion for summary judgment. On January 7, two months after the complaint was filed, the magistrate ordered all discovery stayed pending the filing by plaintiffs' counsel of a "detailed certificate showing facts in [plaintiffs'] possession" supporting their contention that the statute of limitations had been tolled. Plaintiffs eventually filed three such certificates in response to the order.

Following oral argument on all pending motions, the district court dismissed the complaint.

The district court noted that three of the four defendants in this action were charged in the prior government proceedings with illegal price fixing in the sale of United States Forest Service timber in the Detroit Ranger District of the Willamette National Forest. The elements of the conspiracy alleged in this action were identical to those alleged in the government actions, except for the addition in the first four elements (subparagraphs (a) through (d) quoted above) of this complaint of the words "and other timber," and the addition of a fifth element—the allocation among the conspirators of geographic territories for the purchase of timber from private landowners

(subparagraph (e) quoted above). The court concluded that "in spite of the added words 'and other timber,' plaintiffs' first four allegations of an illegal conspiracy simply restate the conduct complained of in the government cases."

The court held plaintiffs lacked standing as to this part of the alleged conduct for two reasons: First, plaintiffs' inability to sell timber from private lands outside the Detroit Ranger District, as alleged in their complaint, "was at best incidental to defendants' illegal bidding activities in the Detroit Ranger District" relating to Forest Service timber alleged in both the government and private suits. Second, "plaintiffs have made no showing that, absent defendants' conduct in the Detroit Ranger District, they would have found a buyer" in time to exercise their option, and therefore the relationship between plaintiffs' alleged loss in the sale of private timber outside the Detroit Ranger District and defendants' price fixing in the purchase of Forest Service timber within that District was "totally speculative and [did] not confer standing." Accordingly, the court dismissed "that portion of plaintiffs' claim that rests on the conspiracy complained of in the prior government cases."

The court held plaintiffs' remaining claim of illegal territorial allocation was barred by the statute of limitations. The court held, and plaintiffs agree, that since the judgment was entered against defendants in the criminal case more than a year before the plaintiffs filed their complaint, by the express terms of 15 U.S.C. § 16(i) plaintiffs may not rely upon the criminal action to toll the running of the four-year limitations period of 15 U.S.C. § 15b. The court also held that the statute of limitations was not tolled by the government's civil case, which was then pending. The court said, "[t]he conspiracy regarding timber sales in the Detroit Ranger District complained of in the government's civil action does not bear a real relation to plaintiffs' claim of territo-

the statute of limitations in respect of every private or State right of action arising under said laws and based in whole or in part on

any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter. . . .

rial allocation designed to depress the price of private timber. This action is therefore not based in whole or in part on matters complained of in the government civil action. That action accordingly does not toll the statute of limitations for purposes of this action."

Summarizing, the court said, "to the extent plaintiffs' ... claim is based solely upon the defendants' illegal activities in the Detroit Ranger District, the plaintiffs lack standing and ... to the extent it is one of illegal territorial allocation of private timber, [it] is barred by the statute of limitations."

## II.

The district court did not state that it relied in any way upon the challenge to the Rule 11 certification, and clearly any such reliance would have been error.

■ Plaintiffs' counsel signed the complaint. By the terms of Rule 11, those signatures constituted a certification "that to the best of [their] knowledge, information, and belief there is good ground to support" the pleading. No more is required. *See United States v. International Association of Bridge, Structural & Ornamental Iron Workers, Local No. 1,* 438 F.2d 679, 681 (7th Cir.1971). The rule is not a discovery device. It is not to be used to require plaintiff to offer proof of his case through supplemented Rule 11 certificates before discovery and before trial. *See Lau Ah Yew v. Dulles,* 236 F.2d 415, 416 (9th Cir.1956); Risinger, *Honesty in Pleading and Its Enforcement: Some "Striking"*

*Problems with Federal Rule of Civil Procedure 11,* 61 Minn.L.Rev. 1, 34 (1976). Filing of groundless litigation for harassment or delay should be dealt with under Rule 16, Rule 36, or Rule 56, rather than under Rule 11. 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1333, at 500 (1969). Requiring supplementary certificates under Rule 11 improperly exposes plaintiff to the risk of adverse judgment without the safeguards of Rule 56.

## III.

■ The district court's rulings on both standing and limitations rested upon the court's erroneous construction of the complaint.[2]

### *Standing*

■ Plaintiffs were entitled to have the allegations of their complaint read broadly and liberally, and to have them taken as true. *Beltz Travel Service, Inc. v. International Air Transport Association,* 620 F.2d 1360, 1365 (9th Cir.1980); *Walker Distributing Co. v. Lucky Lager Brewing Co.,* 323 F.2d 1, 3–4 (9th Cir.1963). So read, plaintiffs alleged a single conspiracy among the defendants and other purchasers of timber, beginning in 1968 and continuing through June 1973, to eliminate competition, fix prices, and allocate timber from United States Forest Service lands and other lands in Oregon.

■ As a potential seller of timber in the market affected by the alleged conspiracy, plaintiffs clearly had standing. *Solinger v.*

---

**2.** If the court relied in any part upon any deficiency in plaintiffs' factual showing in opposition to defendants' motion for summary judgment, it would have been error to do so since discovery was stayed and plaintiffs were not afforded an adequate opportunity to develop facts in opposition to the motion. *See Portland Retail Druggists Association v. Kaiser Foundation Health Plan,* 662 F.2d 641, 645–46 (9th Cir.1981); *Program Engineering, Inc. v. Triangle Publications, Inc.,* 634 F.2d 1188, 1193 (9th Cir.1980); *Schoenbaum v. Firstbrook,* 405 F.2d 215, 218 (2d Cir.1968) (en banc); Fed.R.Civ.P. 56(f). *See also Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

Defendants contend that discovery was not totally foreclosed but only limited to potentially dispositive issues, an entirely proper procedure. *Hayashi v. Red Wing Peat Corp.,* 396 F.2d 13, 14–15 (9th Cir.1968); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2040 (1970). However, the minute order reflecting the court's ruling prohibited discovery without limitations. Defendants say they invited plaintiffs to engage in discovery as to the dispositive issues and plaintiffs declined to do so. We agree with plaintiffs that the transcript does not reflect such an offer and rejection.

*A & M Records, Inc.,* 586 F.2d 1304, 1310–11 (9th Cir.1978). They were not merely "incidental" victims of a conspiracy to fix prices of timber from Forest Service land in another area, but were the intended "targets" of at least the territorial allocation aspect of a broader conspiracy encompassing the sale of timber for private lands in an area in which they sought unsuccessfully to do business, and therefore had standing to challenge the overall conspiracy. *See id.*

■ Nor was there merit in the court's alternate holding that plaintiffs lacked standing because it was "totally speculative" whether they would have found a buyer in time to exercise their option. The complaint alleges that "[a]s a direct and proximate result of the aforesaid combination and conspiracy, plaintiffs were prevented from selling the logs to be cut from timber standing on the property at competitive prices, forcing them to forfeit their earnest money and to relinquish all interest in the property." The causation alleged is not so inherently speculative as to justify denying plaintiffs an opportunity to prove it. *See id. Cf. City of Rohnert Park v. Harris,* 601 F.2d 1040, 1048–49 (9th Cir. 1979).

### Limitations

■ The pace of government antitrust litigation is slow. A private litigant should not be required to defer filing suit until after the defendants' conduct has been disclosed by the government's proof at trial. Nor should the private litigant's right to his day in court depend upon the government's success in its litigation, or upon the likelihood that the private litigant will be able to establish his case. "[S]uspension of the running of the statute of limitations pending resolution of the government action may not be made to turn on whether the United States is successful in proving the allegations of the complaint.... Equally, the availability of section 5(b) to the private claimant may not be made dependent on his ability to prove his case, however fatal failure may prove to his hopes of success on the merits." *Leh v. General Petroleum Corp.,*

382 U.S. 54 at 65–66, 86 S.Ct. 203 at 210–211, 15 L.Ed.2d 134. *Cf. Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322 at 336, 98 S.Ct. 2370 at 2378, 57 L.Ed.2d 239 (1978).

■ For these reasons consideration of whether a later private suit is "based in whole or in part on any matter complained of" in a prior government action, as required to suspend the running of limitations on the private claim during the pendency of the government suit under section 16(i), "in general ... must be limited to a comparison of the two complaints on their face." *Leh v. General Petroleum Corp.,* 382 U.S. 54, 65–66, 86 S.Ct. 203, 210–211, 15 L.Ed.2d 134 (1965). *See also Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 331, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978); *Rader v. Balfour,* 440 F.2d 469, 473 (7th Cir.1971).

■ It is clear from the face of the two complaints that plaintiffs' action is "based ... in part on any matter complained of" in the government's civil suit, and 15 U.S.C. § 16(i) therefore tolled the running of the period of limitations on plaintiffs' suit during the pendency of the government action. Plaintiffs' complaint alleged a conspiracy that included the objectives, means, time span, and geographic scope of the conspiracy alleged in the government suit. Because of this overlap, evidence adduced in the trial of the government suit would be of practical assistance to plaintiffs in proving their own complaint. It was precisely the purpose of section 16(i) to provide such assistance to private antitrust complainants. *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. at 333–34, 98 S.Ct. at 2376–2377; *Minnesota Mining & Manufacturing Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 317–19, 85 S.Ct. 1473, 1476–1477, 14 L.Ed.2d 405 (1965). This is true, and accordingly section 16(i) applies, if the private action is based "in part" on "any matter" complained of in the government suit. If the necessary overlap is present, the purpose of the statute is served though there are differences in the allegations of the two complaints as to the

means used, the defendants named, and the time period and geographic area involved. *Leh v. General Petroleum Corp.,* 382 U.S. at 59, 61, 62–63, 64, 86 S.Ct. at 207, 208–209; *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 335–36, 91 S.Ct. 795, 804–805, 28 L.Ed.2d 77 (1971).

■ Section 16(i) does not apply if the government suit is initiated "under section 15a of this title." Section 15a authorizes the government to recover actual damages for injuries sustained by reason of an antitrust violation. Since the government's civil suit sought damages, defendants argued below and argue here that it was excluded from section 16(i). The district court rejected the argument and we agree. The government also sought injunctive relief as authorized by 15 U.S.C. § 4. Because section 16(i) must be broadly construed to accomplish its remedial purpose, *see Leh v. General Petroleum Corp.,* 382 U.S. at 59, 86 S.Ct. at 207, its exclusionary clause must be restricted to cases brought solely under section 15a. So long as the government suit seeks to "prevent, restrain, or punish" an antitrust violation, section 16(i) is not rendered inapplicable by the fact that monetary relief is also sought. Defendants' suggestion that the result should turn upon the relative importance of the claim for damages and the request for injunctive relief in the particular case is inconsistent both with liberal construction of the statute and with the requirement that the statute be construed to achieve certainty and predictability. *See Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. at 335–36, 98 S.Ct. at 2377–2378 (1978); *Dungan v. Morgan Drive-Away, Inc.,* 570 F.2d 867, 870–71 (9th Cir.1978).

Reversed and remanded for further proceedings consistent with this opinion.