**Franson D.K.S. TOM, D.M.D., dba Diver-sified Dental Services, and Dentaguard, Inc., a Hawaii non-profit corporation, Plaintiffs,**

v.

**HAWAII DENTAL SERVICE, a Hawaii non-profit corporation, Defendant.**

**Civ. No. 82–0361.**

United States District Court,
D. Hawaii.

April 16, 1985.
As Amended April 18, 1985.

Pitluck & Kaulukukui, Wayne M. Pitluck, Thomas K. Kaulukukui, Jr., Russell H. Ando, Honolulu, Hawaii, for plaintiffs.

Kobayashi, Watanabe, Sugita & Kawashima, Bert T. Kobayashi, Jr., Lex R. Smith, Kale Feldman, Honolulu, Hawaii, for defendant.

## DECISION AND ORDER

PENCE, District Judge.

*Facts*

Plaintiff Franson Tom is a dentist doing business as Plaintiff Diversified Dental Services. Plaintiff Dentaguard is a nonprofit prepaid dental insurance plan with which Tom is connected.

Defendant Hawaii Dental Service ("HDS") is a nonprofit prepaid dental insurance plan. Any dentist in the state can belong to it. Most do, and most patients enrolled in an employee dental plan are enrolled with HDS.

HDS is run by managers responsible to a board of directors, most of whom are drawn from among its own member dentists.

HDS reimburses most of the dentist's fee. Depending on the plan the patient selects, the patient typically still must pay a deductible, or copayment of 30% of the fee.

All member dentists file with HDS a form designating their usual, customary, and reasonable (UCR) fees for each dental procedure. These can be amended once a year. HDS requires its member dentists to agree to charge no more for each procedure than a fee equal to the 90th percentile of all the fee schedules it has received from its members. Thus, HDS sets maximum fee schedules beyond which it will not reimburse a dentist for work performed.

Dr. Tom appeared on the scene several years ago. He began to draw patients away from HDS members, principally by advertising to the public and calling himself a price cutter. He "cut" prices by waiving payment of the deductible by the patient, receiving as "payment in full" only that portion of his fee to be paid by the insurance company (HDS). HDS ultimately prohibited him from doing this, refusing to reimburse him at all if he did, and asserting that in reality he was overbilling the insurer by collecting his entire fee from it, whereas HDS's policy called for copayment by the patient.

HDS sued Tom for this practice in state court. Tom responded with this suit against HDS claiming price-fixing and monopoly. Tom now moves for partial summary judgment that the setting of maximum price schedules by HDS is *per se* price-fixing under section 1 of the Sherman Antitrust Act, 15 U.S.C. sec. 1. HDS has moved for partial summary judgment that, (a) as a matter of law, when it sets the maximum price schedules it is not fixing prices, and (b) that plaintiffs have no standing because they have suffered no damage under Sherman I from the claimed illegal acts of price fixing.

*Plaintiffs' Position*

Plaintiffs argue that the 90th percentile maximum price schedule provides an artificial means to raise dental fees, rather than letting such fees find their level in the marketplace. They urge that the incentive is for dentists to anticipate or exceed the 90th percentile in their HDS filing. The system encourages dentists to raise their UCR fees annually (which is as often as HDS allows them to be raised) in anticipation of raising the 90th percentile as high as possible, with an ultimate result of continual escalation of dental fees. In 1981, Hawaii dentists had the highest gross income in the country, although the per capital income of the state's population was relatively low.

Plaintiffs allege that HDS has resisted any attempt to change its structure to allow free competition among member dentists, and has sought to eliminate Tom as a potential competitor by intimidating, harassing, and defaming him. He asserts that HDS has selectively enforced its rules against him, has rejected and failed to pay or delayed paying many of his fee claims,

and has interfered with his business by spreading negative information about his practice to patients and colleagues, filing a bad faith suit in state court, and calling a defamatory press conference to announce the filing of the suit.

*The Law*

The underlying law on plaintiffs' price-fixing count is set out in *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982). There, not unlike here, a medical insurance fee-for-service plan covered the subscribers for medical expenses, and the participating doctors accepted payment from the plan for services rendered to subscribers. Patients of nonmember doctors were covered up to any excess charge over the maximum fee schedule for members.

The plan established a fee schedule. Its board of trustees solicited advice from medical societies about the need to raise fees. The board's proposed fee schedule then was submitted to the membership for a majority vote.

The Court held, 4–3, that such an agreement among competing physicians setting maximum fees was *per se* price fixing under section 1 of the Sherman Act.

This court will therefore assume, without deciding, that under *Maricopa* and its progeny, notably *Ratino v. Medical Service of D.C.*, 718 F.2d 1260 (4th Cir.1983) (suit against medical insurer remanded for factual determination of whether member doctors controlled the insurer), the maximum price schedules set by HDS constituted a *per se* price-fixing violation of section 1 of the Sherman Act. Nonetheless, without reaching this issue, this court grants the motion of HDS for summary judgment on the issue of "standing". Plaintiffs have not shown that the alleged price-fixing caused them injury.

█ Even if the maximum price-fixing system of HDS does tend, over time, to lead to a gradual rise in dental fees, it is not apparent that this damages Dr. Tom's practice. An alleged conspiracy among other dentists to raise their fees cannot harm one who, far from participating in the conspiracy, attempts, by his own admission, to cut prices. In fact, other dentists' higher fees should benefit one who keeps fees low by allowing him to lure away patients. Tom is not a patient, he is a competitor. *Cf. Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

The injury which must be found in order to validate plaintiffs' standing to sue under Count I cannot come from the refusal of HDS to allow Dr. Tom to waive the patients' required insurance deductible ("copayment"). *E.g., Davidowitz v. San Diego County Dental Society*, 1983–1 Trade Cases 69,362, 69,365 (S.D.Cal.1983).

In fact, it has been held that waiver of copayments is a fraudulent and deceptive business practice and is actionable by any dentist.

> Dental insurers are entitled to write policies containing copayment provisions. Whether or not copayment encourages more conservative use of dental services or achieves some other lawful goal, the carriers are entitled to write a copayment provision and to enforce it. If it is a socially undesirable provision, it is up to government to bar its use. It is not up to dentists to tiptoe around it by overbilling.

*Feiler v. New Jersey Dental Ass'n*, 191 N.J.Super. 426, 467 A.2d 276, 284 (1983).[1]

Plaintiffs also maintain that they have suffered injury through the alleged acts of intimidation and harassment by HDS, mentioned above. They argue that HDS performed these acts to damage Tom's business, thereby furthering the price-fixing conspiracy embodied in its setting of maximum prices, and urge that such injury suffices to accord them standing.

However, HDS appears to have been within its rights in engaging in most, if not all, of the numerous acts complained of. For example, HDS unilaterally reduced its payments on Dr. Tom's submitted claims for work performed by 30%. This action

---

1. Plaintiffs cite *Madden v. California Dental Service,* California Superior Court, 3d Dep't, County of San Francisco, No. 802 299 (March 6, 1985), in which the court found no standing problem. *Madden* was a suit by *purchasers* of dental services.

had a reasonable basis. Dr. Tom was waiving the 30% copayment deductible. The insurer, therefore, was losing money in two ways: because of the greater volume of patients engaging Tom's free (to them) services, and because, arguably, Tom's "real" fee was actually only 70% of the fee he claimed to the insurer, for he waived the deductible. *Feiler, supra.*

The same conclusion applies to the HDS suit against Tom for his waiver of copayments, to calling the allegedly defamatory press conference to announce the suit, and to most or all of HDS's other acts directed against plaintiffs.

Moreover, these "pendent" injuries do not flow from price-fixing or from acts done to further price-fixing. Rather, the acts from which plaintiffs claim injury were responses by HDS to Tom's policy of waiving the patient deductible for services rendered and collecting his entire fee from HDS.[2]

■ HDS also seeks summary judgment on certain pendent counts of the complaint. Plaintiffs lack standing to sue HDS for violation of the Hawaii price-fixing law, H.R.S. §§ 480-2 and 480-4, for the same reasons that they lack standing to sue for violation of the federal price-fixing statute, 15 U.S.C. § 1. Summary judgment is therefore granted to defendant HDS on Count III of the amended complaint.

Count V alleges breach of the reimbursement contract between HDS and Tom. As set forth above, HDS did not breach its contract by cutting its payments to Tom for billed services by 30% when Tom waived payment of the "copayment" deductible by the patient. Rather, Tom over-billed HDS by 30%. His actual fee was only 70% of what he told HDS it was. No issue of fact appears. Thus, summary judgment is granted to HDS on this count.

■ Count VII specifically complains of HDS's refusal to permit Tom to waive co-payments. As discussed above, courts have held that not only is it not an unrea-

sonable restraint of trade so to refuse, but waiver of copayments is actionable. Summary judgment is granted to HDS on this count also.

Count VIII asserts interference with advantageous business relationships. Apparently, this refers to instances in which HDS contacted patients or others and said negative things about Dr. Tom and his practice. HDS states that in discovery, plaintiffs have produced no instances of such interference other than the refusal to permit Tom to waive patient copayments.

■ However, this count relates to plaintiffs' monopoly claim against HDS. That issue is not the subject of these summary judgment motions, which are limited to the price-fixing issue. Issues of fact remain as to what may have been said, to whom, and whether such statements, if any, were made to further a monopolistic plan or practice. Summary judgment on this count is denied.

Since the issue has never been reached because of lack of standing on plaintiffs' part, plaintiffs' motion for summary judgment on Count I, perforce, is DENIED.

Defendant's motions for partial summary judgment on Counts I, III, V, and VII are GRANTED. Defendant's motion for summary judgment on Count VIII is DENIED.

### ORDER

Plaintiffs lack standing to sue Hawaii Dental Service for violation of the Hawaii price-fixing law, H.R.S. secs. 480-2, 480-4, for the same reasons that they lack standing to sue for violation of the federal price-fixing statute, 15 U.S.C. sec. 1. This court's decision and order of April 16, 1985, is, therefore, amended to grant summary judgment to defendant Hawaii Dental Service on Count III of the amended complaint.

IT IS SO ORDERED.

---

**2.** The cases cited by the plaintiffs in which antitrust standing was broadened are inapposite, viz, *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982); *Virginia Academy of Clinical Psychologists v.* *Blue Shield of Virginia,* 624 F.2d 476 (4th Cir. 1980); *Ostrofe v. H.S. Crocker Co. (Ostrofe II),* 740 F.2d 739 (9th Cir.1984); and *Fine v. Barry & Enright Productions,* 731 F.2d 1394 (9th Cir. 1984).