**Jack SOLINGER, Plaintiff-Appellant,**

**v.**

**A&M RECORDS, INC., Transamerica Corp., United Artists Corp., United Artists Records, Inc., Eric-Mainland Distributing Co., Musical Isle of America, Record Merchandising Company, Inc., Jerome S. Moss, Robert Fead, Sidney Talmadge, Motown Record Corporation, Defendants-Appellees.**

**No. 76–2965.**

United States Court of Appeals, Ninth Circuit.

Nov. 27, 1978.

Francis G. Willmarth (argued), of Long & Levit, San Francisco, Cal., for plaintiff-appellant.

Thomas P. Lambert (argued), Mitchell, Silberberg & Knupp, Los Angeles, Cal., for defendants-appellees.

Before BARNES, TRASK and HUG, Circuit Judges.

BARNES, Senior Circuit Judge:

This is an appeal from a district court judgment dismissing a private antitrust action brought under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and sections 4 and 7 of the Clayton Act, 15 U.S.C. §§ 15 and 18 on the ground that the plaintiff lacked standing to sue for damages under section 4 of the Clayton Act.

I

Jack Solinger, the former president and general manager of Independent Music

Sales, Inc. (I.M.S.), an independent distributor of phonographic records and tape recordings, by an original and an amended complaint, sued A&M Records, Inc. (A&M) and Motown Record Corporation (Motown) for damages arising from alleged antitrust violations, including a territorial allocation scheme. Solinger in his original complaint, had sued Transamerica Corporation for violating section 7 of the Clayton Act and section 2 of the Sherman Act. He alleged that Transamerica engaged in improper corporate mergers and consolidations, stock acquisitions, and acquisitions of corporate assets. He further alleged that these acquisitions of manufacturers, including defendant United Artists, and distributors, including defendants United Artists Records, Inc., Eric-Mainland, Musical Isle of America, Record Merchandising Co., Inc., and individually named officers thereof, Moss, Fead and Talmadge, resulted in a direct lessening of competition in the record distribution industry.

Until March 1973, I.M.S. was the principal independent distributor of phonographic records and tape recordings in northern California and acted as the distributor for defendants A&M and Motown, two large manufacturers of records and tape recordings.[1] As a distributor for these companies, I.M.S. principally serviced northern California, but also sold A&M and Motown products to certain retail accounts in southern California. The latter named area, however, was primarily serviced for A&M and Motown by another distributor, Record Merchandising Company.

In 1972 and 1973, Solinger negotiated on his own behalf to purchase I.M.S. from its sole shareholder, Zenith Distributing Company. He obtained financing, and negotiated both a written but unsigned purchase agreement, and a written but unsigned "Rental and Service Agreement" from Zenith. The purchase was to be made by

J.N.S. Enterprises, an entity Solinger intended to create for that purpose.

Before signing the final papers, Solinger contacted both A&M and Motown to determine whether they would retain I.M.S. as their distributor after such a purchase. Both companies indicated that they would *not* retain I.M.S. Solinger contends that he did not complete the purchase of I.M.S. because I.M.S. could not survive without the A&M and Motown contracts. Shortly thereafter, both companies terminated I.M.S. as a distributor and without these two contracts, I.M.S. went out of business.

Solinger alleges that A&M and Motown refused to deal with him and with I.M.S. because, pursuant to his specific directions as president, I.M.S. had refused to comply with a territorial allocation plan established by A&M and Motown under which northern and southern California were divided into two separate territories. Solinger also alleges that after A&M and Motown terminated their distribution agreements with I.M.S., Eric-Mainland Distributing Company became the distributor for both A&M and Motown products for northern California and began to comply with a territorial allocation plan under which it would not sell A&M and Motown products in southern California.

## II

■ The district court granted Motown's motion to dismiss Solinger's complaint (as to Motown alone) on the ground that the complaint failed to state a claim upon which relief could be granted. Thereupon all other defendants filed similar motions. The court filed a final judgment in favor of all defendants on June 29, 1976, stating only that "the action be, and hereby is dismissed." Although the grounds for dismissal were not stated in the order, the court indicated that "basically" the plaintiff lacked standing.[2]

---

1. By 1973 A&M and Motown were ranked as the fourth and fifth largest record manufacturers in the popular music field.

2. On June 25, 1978 counsel raised the question of the *form* of the orders proposed by the moving parties:

Under Fed.R.Civ.P. 12(b)(6), however, if there is a motion to dismiss for failure to state a claim upon which relief can be granted, and matters outside the pleadings are presented to and not excluded but are heard by the court, the motion is to be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56, and particularly 56(c) thereof. Because material outside the pleadings was presented in this case, the judgment must be held to be one for summary judgment. *Dorado v. Kerr,* 454 F.2d 892, 896 (9th Cir. 1972).

■ It is elementary that the district court before granting summary judgment must determine that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Baldwin v. Redwood City,* 540 F.2d 1360 (9th Cir. 1976); *Great Western Bank & Trust v. Kotz,* 532 F.2d 1252, 1254 (9th Cir. 1976); *Zweig v. Hearst Corp.,* 521 F.2d 1129, 1133 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). When no finding is made by the court specifying with particularity what material facts have been established, and without a finding that no material factual issues remain, there is no way in which a reviewing court can pass upon the merits of the controversy when the judgment is appealed. We have no power to judge the fact issue de novo. *Hycon Manufacturing Co. v. H. Koch & Sons,* 219 F.2d 353, 355 (9th Cir.), *cert. denied,* 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278 (1958).

■ Because we are required to review this case as one for summary judgment, and because the court failed to determine whether any genuine issues of material fact exist and whether the plaintiff is entitled to judgment as a matter of law, we remand part of the case to the district court for further proceedings to determine what the undisputed facts are, and that no material factual issues remain; and, if that be true, whether Solinger has standing. As discussed in the remainder of this opinion, we affirm as a matter of law the district court's determination that plaintiff does not have standing to pursue his claim under section 7 of the Clayton Act.

### III

Section 4 of the Clayton Act, 15 U.S.C. § 15 (1976) provides a private cause of action for those parties injured by antitrust violations such as the ones alleged by Solinger in his complaint: violations of sections 1 and 2 of the Sherman Act and sections 4 and 7 of the Clayton Act, 15 U.S.C. §§ 1, 2, 15 and 18. Section 4 provides:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fee.

15 U.S.C. § 15. Despite the broad language of this provision, the parties entitled to recover under this section have been greatly limited through judicially created restrictions on standing. *See generally* L. Sullivan, *Handbook of the Law of Antitrust* § 247, at 770 (1977); Berger & Bernstein, *An Analytical Framework for Antitrust Standing,* 86 Yale L.J. 809 (1977); Lytle & Purdue, *Antitrust Target Area Under Section 4 of the Alleged Antitrust Violation,* 25 Am.U.L.Rev. 795 (1976).

MR. McKENZIE [Attorney for plaintiff]: That order [presented on behalf of Transamerica Corporation, et al.] recites that the Court lacks subject matter jurisdiction over the action. I understand Your Honor's ruling today, you simply hold that we haven't brought ourselves within the standing provision, which is 15 U.S.C. § 15. I think the

form of this order goes way beyond that. Therefore I don't think this is a proper form of order.

\*　\*　\*　\*　\*　\*

THE COURT: It is basically standing.

\*　\*　\*　\*　\*　\*

THE COURT: For the record it's on standing.

In order to have standing under section 4 the plaintiff must allege nonconclusory facts establishing that there has been injury to the plaintiff's business or property and that the injury to the plaintiff's business or property occurred "by reason of" the antitrust violation. The plaintiff's claim may be dismissed for lack of standing as a matter of law, *John Lenore & Co. v. Olympia Brewing Co.,* 550 F.2d 495, 500 (9th Cir. 1977), where there is an insufficient showing of causation. However, if the plaintiff states sufficient facts to support his allegations that an antitrust violation has occurred and that he has sustained injury to his business or property, he is generally entitled to go to the jury on the violation and injury issues. These two determinations, unlike causation, are not questions of law; they are questions of fact. *See Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d 1286 (5th Cir. 1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972), *aff'd after retrial,* 509 F.2d 784 (5th Cir.), *cert. denied,* 423 U.S. 833, 96 S.Ct. 59, 46 L.Ed.2d 52 (1975) (whether plaintiff is a prospective purchaser is a question of fact for the jury); *Pacific Seafarers, Inc. v. Pacific Far East Line,* 48 F.R.D. 347, 351 (D.D.C.1969) (determination on motion to dismiss is only whether the pleadings present a triable antitrust issue and show the requisite causation).

### IV

As stated above, Solinger alleges in his complaint that the defendants committed actions that violate sections 1 and 2 of the Sherman Act and sections 4 and 7 of the Clayton Act, 15 U.S.C. §§ 1, 2, 15 and 18. This Court determines that Solinger has made a sufficient showing of antitrust violations in his complaint to survive a motion to dismiss, in view of the fact that we must take the allegations of the complaint as true. Upon remand the district court should consider whether antitrust violations have occurred, whether there are genuine

issues of material fact remaining, and, if not, whether either party is entitled to judgment as a matter of law.[3] We do note, however, that summary judgment is not generally considered to be an appropriate remedy in a case involving antitrust violations because such claims usually involve extensive factual determinations. *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 500, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1967).

### V

To have standing, Solinger must also show that he has sustained injury to his business or property. In this case Solinger was a prospective purchaser of a business. Some courts have held that a prospective purchaser may not recover under section 4 because the amount of damage sustained is not sufficiently ascertainable, and thus the plaintiff has not suffered tangible injury to his business or property. *E. g., Duff v. Kansas City Star Co.,* 299 F.2d 320, 323 (8th Cir. 1962), *see generally* L. Sullivan, *Handbook of the Law of Antitrust,* § 247 at 770 (1977). We disagree, however, and adopt the view that a prospective purchaser who has taken substantial demonstrable steps to enter an industry and who is thwarted in that purpose by antitrust violations, has suffered a possible ascertainable loss.

In making its determination whether the plaintiff is a prospective purchaser, we suggest that the district court should consider the approach adopted in *Waldron v. British Petroleum Co.,* 231 F.Supp. 72 (S.D.N.Y. 1964). In *Waldron,* the court had to determine whether the plaintiff (who had a written option *contract* to purchase Iranian oil), met the standing requirements of section 4. In analyzing whether the plaintiff had suffered the necessary injury to "business or property" the court summarized the case law in the various circuits as follows:

In determining whether a plaintiff has proved the requisite intention and prepar-

---

**3.** In part VI of this opinion, we hold that plaintiff does not have standing as a matter of law to pursue his section 7 claim. It will therefore

be unnecessary for the district court to determine whether summary judgment should be granted as to the section 7 violation.

edness, the courts have looked for *varying combinations* of the following typical elements:

1. The background and experience of plaintiff in his prospective business . .

2. Affirmative action on the part of plaintiff to engage in the proposed business . . .

3. The ability of plaintiff to finance the business and the purchase of equipment and facilities necessary to engage in the business . . .

4. The consummation of contracts by plaintiff . . .

*Id.* at 81–82 (citations omitted; emphasis supplied.) [4]

We, of course, take no position on the question whether Solinger can support a factual determination that he met the requirements of the intention and preparedness test under the facts of this case. We simply remand the case to the district court for a determination whether summary judgment is appropriate on this issue and again note that the issue whether the plaintiff is a prospective purchaser is factual in nature and seldom presents a situation appropriate for a determination by summary judgment.

## VI

■ The third element that Solinger must show in order to sustain a claim under section 4 is that the loss to his business or property was caused by the alleged anti-

trust violation. The injury caused by the violation must be one the antitrust laws were designed to protect against. *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). *Cf.* Handler, Changing Trends in Antitrust Doctrines, 77 Columbia L.Rev. 979, 989 to 993.

■ This Court has generally used the target area approach in order to determine whether a given plaintiff has satisfied the causation element of standing.[5] *Bosse v. Crowell, Collier & Macmillan*, 565 F.2d 602 (9th Cir. 1977); *John Lenore & Co. v. Olympia Brewing Co.*, 550 F.2d 495 (9th Cir. 1977); *In re Western Liquid Asphalt Cases*, 487 F.2d 191 (9th Cir. 1973); *In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 129 (9th Cir.), *cert. denied*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). Under the target area approach the plaintiff must show that he is within the area of the economy that is endangered by a breakdown of competitive conditions. *Conference of Studio Unions v. Loew's, Inc.*, 193 F.2d 51, 54–55 (9th Cir. 1951), *cert. denied*, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952).

Solinger alleged that he has standing to pursue his claims under section 1 and 2 both as a prospective purchaser of I.M.S. and as an employee of that company. He argues that he has standing to recover damages under section 1 of the Sherman Act because of the territorial restrictions imposed by A&M and Motown and under section 2 of

---

**4.** For other cases using the intention and preparedness test, *see Hecht v. Pro-Football, Inc.*, 187 U.S.App.D.C. 73, 570 F.2d 982 (1976); *Quinonez v. National Assoc. of Securities Dealers, Inc.*, 540 F.2d 824 (5th Cir. 1976); *Woods Exploration & Producing Co., Inc. v. Aluminum Co.*, 438 F.2d 1286 (5th Cir. 1971).

**5.** The courts have used three different methods in order to determine whether a given plaintiff has satisfied the causation element: the target area approach, the direct injury approach, and the zone of interests approach, the latter of which was recently followed in *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142 (6th Cir. 1975). We have not commented on the zone of interests approach but we have criticized the direct injury test:

[I]f the claimant is separated from the violator by an intermediate antitrust victim, standing is denied by attaching conclusory labels such as "remote", "indirect", and "consequential". Resurrecting notions of privity, this test thus arbitrarily forecloses otherwise meritorious claims simply because another antitrust victim interfaces the relationship between the claimant and the alleged violator.

*In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 127 (9th Cir.), *cert. denied*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). *Compare*: Sherman, Antitrust Standing: From *Loeb* to *Malamind*, 51 N.Y.U.L.Rev. 375; Conclusion, 405 to 407 (1976).

the Sherman Act because of the territorial restrictions imposed by A&M and Motown and under section 2 of the Sherman Act because of a series of direct and indirect acquisitions by defendant Transamerica Corporation.

[11] In order to have standing under section 4 when the plaintiff has alleged violations of sections 1 and 2, Solinger must show that the injury occurred within an area of the economy that foreseeably would have been affected by the antitrust violation alleged. *See, e. g., In re Western Liquid Asphalt Cases*, 487 F.2d 191, 199 (9th Cir. 1973), *cert. denied*, 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974) (indirect purchaser in the chain of distribution foreseeably injured by price-fixing conspiracy); *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 220 (9th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964) (held that the plaintiff was within the area of the economy that the defendant could reasonably have foreseen would be affected by the alleged antitrust violations); *Hoopes v. Union Oil Co.*, 374 F.2d 480 (9th Cir. 1967) (lessee's interest in certain property sufficient to allow lessee standing to sue for alleged antitrust violations, despite the fact that the lessor could also have sued, because it was foreseeable that the lessee's interest would be affected.) [6]

If Solinger can support a factual determination that he was a prospective purchaser of I.M.S., he almost certainly has standing to pursue a claim against A&M and Motown for any territorial restriction that violates section 1 of the Sherman Act. As a prospective purchaser of a company and a potential new entrant into the market, Solinger allegedly has been foreclosed from entering the market because of A&M's and Motown's anticompetitive refusal to deal with him.[7] He is within the area of the economy that the defendants should have foreseen would be affected by their violation of the antitrust laws, if any. *In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 129 (9th Cir. 1973).

As a prospective purchaser Solinger is also entitled to pursue his claim against Transamerica Corporation under section 2 of the Sherman Act if its acquisitions caused unreasonable barriers to entry. As a potential entrant to the market, Solinger would be within the area of the economy that Transamerica should have foreseen would be affected by proof of its alleged violation of the antitrust laws.

Solinger does not, however, have standing in his capacity as an *employee* of I.M.S. to pursue his claims under section 1. He is not within the area of the economy that the antitrust laws were designed to protect. *See Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).[8] His loss of salary was merely incidental to the alleged antitrust violation and was not within the area of the economy

---

**6.** This Court did not use the foreseeability approach in *In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 129 (9th Cir.), *cert. denied*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1975) (farmer did not have standing to sue for damages because of automotive antipollution devices, no discussion of foreseeability.) However, the court again used a foreseeability test in *Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975).

**7.** A territorial restraint is "a promise by a buyer that he will not sell the goods outside a specified area or to customers who reside or have their place of business outside of that area." Note, Restricted Channels of Distribution under the Sherman Act. 75 Harv.L.Rev. 795, 796 (1962). And *see*: *Continental T.V., Inc. v. GTE–Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), overruling *United*

States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), *Id.* 433 U.S. 58, 97 S.Ct. 2549. Sylvania "stands in sharp contrast to the *per se* attitudes in *United States v. Topco Associates, Inc.*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972), and *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968)" Handler, Changing Trends in Antitrust Doctrines, 75 Columbia L.Rev. 979, 980–988 (1977).

**8.** Shareholders, officers, and employees of corporations are generally denied standing to sue. *Vincel v. White Motor Corp.*, 521 F.2d 1113 (2d Cir. 1975); *Ash v. International Business Machines, Inc.*, 353 F.2d 491 (3d Cir.), *cert. denied*, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1975). Note, Sylvania and Vertical Restraints on Distribution, 19 Boston College L.Rev. 751.

that the defendants should have foreseen would be affected by its violation.

A different causation test exists in order to show standing under section 4 of the Clayton Act when a section 7 violation is alleged.[9] The plaintiff must be a "component of the competitive infrastructure" or a "component of competitive significance." *Bosse v. Crowell, Collier & Macmillan*, 565 F.2d 602, 607 (9th Cir. 1977) (citing *John Lenore & Co. v. Olympia Brewing Co.*, 550 F.2d 495, 500 (9th Cir. 1977)).

In this case Solinger is not a "member of the competitive infrastructure" or a "component of competitive significance" either in his capacity as a prospective purchaser or in his capacity as an employee. He has no standing as a matter of law to pursue his claim under section 7 and the district court's dismissal of this portion of the complaint was proper.

9. Although this Court has not so stated, the threshold causation inquiry of the target area test has varied depending upon the type of antitrust violation that is alleged to have caused injury to the plaintiff. In cases in which a section 1 or 2 violation is alleged, the test is whether the antitrust violation is clearly within the area of the economy that the defendants should have or did foresee would be endangered by the breakdown of competitive conditions. *Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975); *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 220 (9th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1969); *Conference of Studio Unions v. Loew's, Inc.*, 193 F.2d 51, 54–55 (9th Cir. 1951), *cert. denied*, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952). When a section 7 violation is alleged, however, the plaintiff must be a "component of the competitive infrastructure" or a "component of competitive significance." *Bosse v. Crowell, Collier & Macmillan*, 565 F.2d 602, 607 (9th Cir. 1977) (citing *John Lenore & Co. v. Olympia Brewing Co.*, 550 F.2d 495, 500 (9th Cir. 1977)). The difference is logical. An antitrust violation occurs under section 7 of the Clayton Act if there is a merger or acquisition that causes substantial lessening of competition or a tendency to monopoly "in any line of commerce in any section of the country." 15 U.S.C. § 18 (1976). Before a private party can be injured directly by the type of violation section 7 was designed to prevent, the party must be an existing competitor in the relevant market. Although others may feel tangential effects of lessening competition, such as raised prices or limited supply, the only immediate injury caused by an illegal merger or acquisi-

Affirmed in part, reversed in part, and remanded in part.

tion is a lessening of competition and only a competitor could be directly affected. The test for standing that this Court has used for a section 7 violation is designed to allow only those parties who are injured directly to sue. Thus, the statement that a party must be a member of the competitive infrastructure is simply another way of saying that only a competitor within a given market can be injured by a given merger or acquisition and only those parties should have standing to sue.

When a section 1 violation is alleged, however, the scope of parties who can be directly injured by an action that "the antitrust laws are designed to prevent" is much broader. It is not only the competitor who is directly injured. Under section 1 of the Sherman Act "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (1976). The most obvious examples of parties who are not competitors but who are affected by section 1 antitrust violations are those who feel the effects of a secondary boycott and potential competitors who are attempting to enter the market but who are precluded from doing so because of barriers to entry. Individual consumers may be directly affected by an illegal tying arrangement.

Because a party other than a competitor who alleged a section 1 or 2 violation may be within the area of the economy that the antitrust laws are designed to protect, this Court has formulated another test for standing. As discussed in this opinion, the test is foreseeability.