11 F.3d 1460
 1993-2 Trade Cases P 70,445
 In re DUAL-DECK VIDEO CASSETTE RECORDER ANTITRUST LITIGATION,
GO-VIDEO, INC., a Delaware Corporation, Plaintiff-Appellant,
v.
MATSUSHITA ELECTRICAL INDUSTRIAL CO., LTD., Victor Company
of Japan, Ltd., Sony Corporation, Defendants-Appellees.
 No. 92-16709.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 15, 1993.
 
 Joseph M. Alioto, The Law Firm of Joseph M. Alioto, San Francisco, CA, Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for plaintiff-appellant.
 A. Paul Victor, and Jay N. Fastow, Weil Gotshal & Manges, New York City, John H. Sharer, Gibson, Dunn & Crutcher, Los Angeles, CA, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before: ALARCON, LEAVY and KLEINFELD, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 We resolve three issues in this appeal. They involve collateral estoppel in antitrust claims, standing in antitrust claims, and trademark infringement. On all three we affirm the district court's judgment in favor of defendants.
 
 Facts
 
 2
 Go-Video sells a videocassette recorder which has two decks in one machine. This facilitates watching one program from a tape while recording another from a television signal, and copying one tape onto another. When the complaint was filed, Go-Video was the only producer of a two-deck VCR. All other manufacturers sold single-deck VCRs. Go-Video alleges that its competitors conspired to prevent introduction of dual-deck VCRs to the United States by agreeing that they would refuse to manufacture such VCRs or deal with manufacturers or sellers of dual-deck VCRs. It further claims that the competitors have conspired to monopolize the market for consumer electronics products in general.
 
 
 3
 Go-Video has registered a trademark, VCR-2 TM, for its machine. Competitors, which make receivers and other machines to which two videocassette recorders may be attached, have labeled the terminals on the backs of their machines "VCR-1" and "VCR-2," with and without the hyphen. Go-Video claims these companies have infringed on its trademark.
 
 
 4
 In 1987, Go-Video sued Matsushita and other electronics manufacturers for the same antitrust violations alleged in this suit relating to two-deck VCRs, and lost. The case went to a two-month jury trial. The jury answered "no" to a special verdict form asking "[w]as there an agreement, combination or conspiracy not to make or sell to others a dual-deck VCR or sell parts for manufacturing a dual-deck VCR for sale in the United States?" That case was appealed and affirmed, and the judgment is final. The time period at issue in that lawsuit ended on the date of the second amended complaint, April 20, 1988.[1]
 
 
 5
 The present lawsuit was filed because the district judge denied Go-Video leave to file a third amended complaint in the first suit. The complaint makes some claims not advanced in the first, unsuccessful lawsuit. The new claims are that Matsushita and other manufacturers conspired to monopolize markets in consumer electronics equipment other than VCRs, and that some of the defendants infringed upon Go-Video's VCR-2 TM trademark. It also alleges the same antitrust violations as were advanced in the first, unsuccessful lawsuit, but for the 1987-1990 time period.
 
 
 6
 The district court dismissed the antitrust claims relating to two-deck machines under Fed.R.Civ.P. 12(b)(6) because Go-Video was collaterally estopped by the judgment in the first case; those relating to other consumer electronics products were dismissed on summary judgment under Fed.R.Civ.P. 56 because Go-Video lacked standing to assert them; and the trademark infringement claims were dismissed under Fed.R.Civ.P. 12(b)(6) because the markings on the backs of other companies' receivers were fair use as a matter of law.
 
 Analysis
 
 7
 We have jurisdiction to review the matter pursuant to 15 U.S.C. Secs. 15, 26, 1121 and 28 U.S.C. Secs. 1337, 1338. We review the summary judgment de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992). We review dismissal under Fed.R.Civ.P. 12(b)(6) de novo. Oscar v. University Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir.1989) (en banc).
 
 
 8
 I. Collateral estoppel.
 
 
 9
 The collateral estoppel dismissal applied only to the antitrust claims which had been made in the 1987 lawsuit. Although Go-Video lost that case, the judgment does not end the inquiry. Go-Video's 1990 complaint alleges conduct during 1987-1990. Antitrust violations could have occurred during that later period even if actionable conduct did not occur prior to June of 1987. Go-Video correctly points out that "new antitrust violations may be alleged after the date covered by decision or settlement of antitrust claims covering an earlier period." Harkins Amusement Enters. v. Harry Nace Co., 890 F.2d 181, 183 (9th Cir.1989). We agree that the judgment in the 1987 case "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 328, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955). The defendants, by winning Go-Video's first lawsuit, "did not acquire immunity in perpetuity from the antitrust laws." Harkins, 890 F.2d at 183 (citing California v. Chevron Corp., 872 F.2d 1410, 1415 (9th Cir.1989)).
 
 
 10
 We have previously adjudicated a similar issue in Harkins, and Go-Video claims that the district court misunderstood our decision in that case. Harkins, like this case, involved antitrust claims for earlier and later periods in two consecutive lawsuits. But in Harkins we found no collateral estoppel because the second lawsuit "allege[d] new antitrust conduct," alleged that "the defendants entered into conspiracies after the date" of the earlier lawsuit, and alleged facts "at least 10 percent different from the facts" alleged in the first lawsuit. Id. at 183 (emphasis in original). Because of the new factual allegations, we were able to distinguish a Fifth Circuit case, Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 517 F.2d 110 (5th Cir.1975), and avoid an intercircuit conflict.
 
 
 11
 The Exhibitors case held that collateral estoppel barred a subsequent antitrust claim where the plaintiff had demonstrated no change in the facts or circumstances differentiating the conspiracy claimed in the new lawsuit from the conspiracy it had failed to prove in the previous lawsuit. Exhibitors, 517 F.2d at 116. The plaintiff in Exhibitors did not claim that defendants were doing anything different from what they had done before, just that the alleged antitrust activity "has continued throughout the period sued upon." Id. at 114.
 
 
 12
 This case is like Exhibitors, not Harkins. There is nothing new. The paragraphs alleging the conspiracy include no dates. Instead, Go-Video incorporated by reference the paragraphs of its second amended complaint filed in 1988 to allege overt acts:
 
 
 13
 The defendants and their co-conspirators have engaged in the overt acts and entered into the agreements alleged in paragraph 63 and sub-paragraphs (a) through (w) thereof in the second amended complaint in the first Go-Video action, and described more fully in the "statement of specific facts relied upon by Go-Video, Inc., in opposition to motions of defendants for summary judgment on antitrust issues" in the first Go-Video action.
 
 
 14
 Go-Video candidly explains in the text of the complaint that the complaint was filed because the court denied leave to file an amended complaint in the first case, and to assert "violations of law and other acts undertaken by the defendants and their co-conspirators since the filing" of the complaint in the earlier case. By itself, this ambiguous language could mean that the previously formed conspiracy continued to monopolize the market, or that defendants formed a new conspiracy. But taken together with the incorporation by reference of the specific factual allegations in the earlier complaint, and the absence of any new allegations, it is apparent that Go-Video meant to allege only subsequent market consequences of the old conspiracy.
 
 
 15
 The brief does not put this reading at issue. Rather, it directs our attention to its averment in the complaint that the antitrust violations have "continued unabated through the present." No new conspiracy is claimed, just a continuation of the old one. Since Go-Video was not permitted to obtain a jury determination of whether defendants had continued their conspiracy after the 1988 second amended complaint in the previous lawsuit, and post-1988 conduct is distinct from earlier conduct, Go-Video would have us read Harkins to require that it be allowed another lawsuit against the defendants.
 
 
 16
 We conclude that because no new conspiracy was alleged, just continuation of commercial activity pursuant to the old arrangements held not to be an antitrust conspiracy, Exhibitors rather than Harkins, applies to this case. The theory of this case is that defendants formed a conspiracy before 1987 to engage in conduct violative of the Sherman Antitrust Act, and engaged in such conduct subsequent to the time period covered by the 1987 lawsuit. Nothing new is alleged--no new conspiracy, no new kinds of monopolization, no new acts. Distinct conduct is alleged only in the limited sense that every day is a new day, so doing the same thing today as yesterday is distinct from what was done yesterday.
 
 
 17
 The 1987 lawsuit, though, already answered the question of whether the alleged conspiracy was formed, and said it was not. Go-Video is not entitled to take the time of another jury in order to seek a different answer to the same question it asked the first one, whether the pre-1987 conspiracy existed. Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). It had its chance to prove the conspiracy, and failed. Go-Video does not claim that the post-1987 conduct would be violative of the law without the conspiracy. It is as though an earlier jury had rejected a claim that a defendant had unlawfully manufactured a product and was damaging plaintiff by selling it, and a later lawsuit claimed that the manufacturer had continued to sell the same product. Though distinct, the conduct is not new in a way which would vitiate the prior determination that it is lawful.
 
 
 18
 II. Standing.
 
 
 19
 Go-Video also claims in the second lawsuit that defendants conspired to monopolize markets for digital audio tape recorders, high definition television, single-deck videocassette recorders, blank audio and videotape, and other consumer electronics products.[2] These claims were not made in the 1987 lawsuit, so the district court did not dismiss them on collateral estoppel grounds. They were dismissed on summary judgment for lack of standing.
 
 
 20
 Section 4 of the Clayton Act limits its remedies to one "who shall be injured in his business or property." 15 U.S.C. Sec. 15. Go-Video has never marketed or sold any consumer electronics products except for dual-cassette video recorders, so the injury, if any, must relate to its ability to enter those other markets. Under Solinger v. A & M Records, Inc., 586 F.2d 1304 (9th Cir.1978), even a prospective participant in a market may suffer antitrust injury, if it has taken "substantial demonstrable steps to enter an industry and ... is thwarted in that purpose by antitrust violations." Solinger, 586 F.2d at 1309.
 
 
 21
 As a threshold issue, Go-Video suggests that summary judgment cannot be appropriate for this determination, but that is incorrect. See, e.g., Associated Gen. Contractors of California v. California State Council of Carpenters, 459 U.S. 519, 521, 103 S.Ct. 897, 899, 74 L.Ed.2d 723 (1983); Eagle v. Star-Kist Foods, Inc., 812 F.2d 538 (9th Cir.1987). Though Go-Video has found cases expressing chariness about summary judgment, they all came down prior to the 1986 summary judgment trio, Matsushita Electric Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Our de novo examination of the evidence which was before the district court satisfies us that the district court correctly found no genuine issue of material fact.
 
 
 22
 To separate those who have suffered antitrust injury on account of alleged monopolistic barriers to entry, from those who have not, we consider (1) the plaintiff's background and experience in the prospective business, (2) "[a]ffirmative action on the part of [the] plaintiff to engage in the proposed business," (3) the plaintiff's ability to finance entry, and (4) consummation of contracts. Solinger, 586 F.2d at 1310.
 
 
 23
 Go-Video argues that its experience with dual-deck VCRs gives it experience in the consumer electronics market, and that it had taken steps to enter the market for wireless devices to transmit television signals from one place in a home to another, and was developing dual-deck digital audio technology and high definition television. But the district court was right in ruling that any issue of fact as to the wireless television devices was immaterial, and as to the rest, the four factors were all unsatisfied.
 
 
 24
 The wireless devices would enable a person to use a VCR in the living room to watch a tape on a television in the bedroom, without running a wire from the living room to the bedroom. Go-Video did take steps to enter this niche of the consumer electronics market. It obtained a patent and tried to design a device. Whether it took sufficient "significant demonstrable steps" to satisfy Solinger might be arguable.[3] But even if it did, this device could not confer standing, because none of Go-Video's claims alleged any monopolization by defendants of any markets in products of this sort. Go-Video's consultants said that "[t]here are only two major competitors in the second remote television set viewing/VCR control marketplace," Radio Shack and Rabbit. Go-Video did not sue its "only" competitors in the market for this contemplated product, and offered no evidence that any of the companies it did sue had engaged in any conduct which would affect its entry into the wireless television transmission market.
 
 
 25
 For the other product lines, two-deck digital audio machines, and high definition television, the district court correctly found that Go-Video had not taken "substantial demonstrable steps" to enter the market. It had no experience, no affirmative action to enter the market, no demonstrated ability to raise the money to enter the market,[4] and no contracts to manufacture, sell or otherwise participate in the market for either of these kinds of product. Indeed, it had no product. It had never designed, made, or done anything else to bring into existence a dual-deck digital audio tape recorder or a high definition television. All it could prove was that Go-Video people had talked to Sony people and said, without eliciting any interest, that Go-Video would like to work with Sony on high definition television. Its only efforts to enter the industry for non-existent double-deck digital audio was to send some letters, none of which had resulted in any agreements, suggesting to numerous companies that Go-Video would like to sell them licenses for such products. This is pie in the sky, not "substantial demonstrable steps to enter an industry."
 
 
 26
 Go-Video admitted in its Securities Exchange Commission filing that "substantially all of its operating revenues in the foreseeable future will be derived from sales of the VCR-2. TM " The March 9, 1990 prospectus even states that while Go-Video continues to research and develop new products, "[t]here are currently no new products as to which the Company has reached any conclusions as to viability." If the evidence on wireless television, digital audio and high definition television were difficult to interpret, this plain and clear admission would eliminate any difficulty. By its own solemn declaration to the Securities Exchange Commission about its company, Go-Video established that the only product it seriously planned to sell was dual-deck videocassette recorders.
 
 
 27
 Sometimes it may be hard to say exactly where the line falls between an idea for entry into a business, insufficient to confer standing, and "significant demonstrable steps," sufficient for standing. But Go-Video never got close, for the products which would compete with those of the defendants.
 
 
 28
 One can be a "promoter," though he be a pauper, a tyro, and a dreamer; it is a question of where the line shall be drawn. Uniformly, the courts have drawn the line at the point where promotion transcends the level of hopes, desires, and expectations, and reaches a certain stage of maturity and concreteness, a stage where it is accompanied by certain indicia of ultimate success. Put another way, the courts have held that a potential competitor cannot achieve standing merely by demonstrating his intention to enter a field; he must also demonstrate his preparedness to do so.
 
 
 29
 Hecht v. Pro-Football, Inc., 570 F.2d 982, 994 (D.C.Cir.1977) (Wilkey, J.) (footnotes omitted) (emphasis in original). The evidence cognizable under Fed.R.Civ.P. 56 demonstrated, without any genuine issue of fact, that Go-Video had taken no substantial demonstrable steps to enter into production of any product in competition with defendants other than dual-deck videocassette recorders. All four Solinger criteria were unsatisfied for the competing products Go-Video claimed to be developing, high definition television and dual deck digital audio tape recorders. For the one product on which any arguably demonstrable steps had been taken, wireless television transmitters, Go-Video neither pleaded nor proved any antitrust violations by defendants affecting Go-Video's entry into the industry. As to the others, the district court properly granted summary judgment to defendants because of Go-Video's lack of standing.
 
 
 30
 III. Trademark infringement.
 
 
 31
 The district court correctly dismissed the trademark infringement claim for failure to state a claim, on the ground that other manufacturers' use of the designation "VCR-2" was fair use. The complaint said that the defendants used the term "VCR 2" and "VCR-2" on receivers, even though Go-Video had registered the trademark VCR-2 TM. A receiver takes signals from several devices, such as one or two cassette decks, turntables, videocassette recorders, compact disc players, and perhaps other sources, and sends the signals to speakers, television sets, and other devices. The complaint said that a JVC receiver, for example, used the designation "VCR-2" in the instruction book, on the remote controller, and on the receiver itself. The instruction book referred to by the complaint showed that the receiver had jacks on the back for a turntable, tuner, CD player, two videocassette recorders, and two cassette decks. One set of jacks on the back of the receiver was labelled "VCR-2." The remote had buttons labelled so that the user could select any of these devices as inputs or, where appropriate, outputs. For example, a user might press the VCR-2 button on the remote from an easy chair, in order to route the signal from a tape in the second videocassette recorder to the television.
 
 
 32
 Go-Video claims that this use of the term "VCR-2" would "appropriate the valuable goodwill represented by Go-Video's VCR-2 TM mark, and ... pass off the products of these defendants" as Go-Video's. The district court correctly concluded this claim was frivolous in a subsequent Rule 11 proceeding. No confusion of others' products for Go-Video's was possible. A JVC receiver, labeled JVC on the front, would not be mistaken for a Go-Video product because the videocassette jacks on the back were labelled "VCR 1 and VCR 2," and reference was made to "VCR 2" in the instruction book and on the remote. No possibility existed that a person would buy the plainly labelled JVC receiver thinking that it was made by Go-Video, because a set of jacks on the back was labelled "VCR 2." The statute allows use of another's mark where the use is "otherwise than as a trade or service mark." 15 U.S.C. Sec. 1115(b)(4). This was fair use as a matter of law. See New Kids on the Block v. News Am. Publishing, Inc., 971 F.2d 302, 306-08 (9th Cir.1992). The uses were descriptive, and there is no evidence from which an inference of bad faith could be drawn. Cf. Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1423 (9th Cir.1984).
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 The complaint in the second lawsuit, filed in 1990, alleges antitrust violations continuing from 1987. The district court ruled in the 1990 case that any alleged violations from 1987 to April 20, 1988, the date of Go-Video's second amended complaint in the first lawsuit, could have been asserted in the 1987 case, so could not be asserted in the 1990 case. Go-Video has not appealed this determination
 
 
 [2]
 Go-Video's brief invents the term "CEPs," standing for consumer electronics products, to embrace all of these products and more. By speaking of "CEPs," rather than any real products which are made and sold, the brief suggests a level of abstraction which obscures the relevant facts. Of all these products, Go-Video has made only dual deck VCRs. Go-Video has, as we explain, done some preliminary work on wireless television transmitters. It has engaged in insubstantial talk regarding high definition television and dual deck digital audio tape decks. It has done nothing whatsoever to make or sell any of the other products described. Calling all these different products one thing, "CEPs," does not make them one thing for commercial purposes. Nothing in the facts presented to the court or common knowledge establishes that manufacturers of television sets generally make blank videotape, for example. While factual intensiveness probably precludes a general rule regarding the level of generality for appropriate description of the industry in which plaintiff claims standing to file an antitrust complaint, we reject the implication that by designating an abstraction broad enough to embrace different products, a plaintiff can avoid the need to show "substantial demonstrable steps to enter an industry." Solinger v. A & M Records, Inc., 586 F.2d 1304, 1309 (9th Cir.1978)
 
 
 [3]
 Go-Video had not yet designed such a product, let alone made one, as of the time it filed its lawsuit. Its engineering consultant had advised that the product as conceived "produces ghosts in 70% of the installations and is a nuisance to adjust," so was not likely to be marketable, except with a money back guarantee and a price so low that few consumers would take advantage of the guarantee
 
 
 [4]
 Go-Video had a promise from one lender of one million dollars for high definition television conditional upon its obtaining another million dollars from someone else, but it never got the other million