19-2190-cv
*Saxon Glass Technologies Inc. v. Apple, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of September, two thousand twenty.

PRESENT:    RALPH K. WINTER,
            REENA RAGGI,
            DENNY CHIN,
                    *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SAXON GLASS TECHNOLOGIES, INC.,
                    *Plaintiff-Appellant,*


            -v-                                          19-2190-cv


APPLE INC.,
                    *Defendant-Appellee.*


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


FOR PLAINTIFF-APPELLANT:       PATRICK R. DELANEY (Robyn T. Williams,
                               *on the brief*), Devlin Law Firm LLC, Wilmington
                               Delaware.

FOR DEFENDANT-APPELLEE: DALE M. CENDALI (Claudia Ray, Shanti Sadtler Conway, Miranda Means, *on the brief*), Kirkland & Ellis LLP, New York, New York.

Appeal from the United States District Court for the Western District of New York (Elizabeth A. Wolford, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Saxon Glass Technologies, Inc. ("Saxon") appeals from a judgment entered June 21, 2019, in favor of defendant-appellee Apple Inc. ("Apple"). By decision and order entered June 20, 2019, the district court granted Apple's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The district court dismissed Saxon's trademark infringement claim, which alleged that Apple infringed Saxon's IONEX trademark by using the term "Ion-X" to describe the chemically strengthened glass on the Apple Watch. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Saxon is a company that chemically strengthens glass through a process called ion-exchange, which is "a general scientific term that describes the exchange of one type of ion . . . with another." J. App'x at 234. In 2002, Saxon obtained a federal trademark for the mark "IONEX," "in connection with chemical treatment of glass; namely, chemical strengthening of glass by immersion in a molten salt bath." J. App'x at 234. Saxon, which provides its services exclusively to businesses, is the primary

2

provider of glass-strengthening for Gerresheimer Glass Inc. ("Gerresheimer"), and has provided research and development ("R&D") services to Samsung Display and Nippon Electric Glass. Gerresheimer is "the only company" to have purchased Saxon's services "for products that have actually been released." J. App'x at 2792.

In April 2015, Apple began selling the Apple Watch with a glass cover strengthened by ion-exchange. J. App'x at 236. Apple uses the term "Ion-X Glass" to describe ion exchange strengthened glass. J. App'x at 267. The term appears on the backs of the watches and on packaging boxes alongside descriptions of other materials, such as "Composite Black" and "7000 Series Aluminum." J. App'x at 236. The term is also displayed on Apple's website, where "Ion-X" is used to explain that the glass is "fortified at the molecular level through ion-exchange," J. App'x at 239, and the Apple logo appears near or on the same page as the term "Ion-X." Apple has not applied to register "Ion-X" as a trademark with the United States Patent and Trademark Office and does not include it on the list of trademarks on its website.

On June 29, 2015, Saxon filed a complaint against Apple, alleging trademark infringement based on likelihood of confusion between its IONEX mark and Apple's use of the term Ion-X. On December 28, 2018, after discovery concluded, Apple moved for summary judgement, asserting that (1) its use of Ion-X constituted fair use and (2) Saxon is unable to show likelihood of confusion between the marks. On June 21, 2019, the district court granted Apple's motion for summary judgment on both grounds.

3

As to fair use, the district court concluded that a reasonable jury could only find that Apple's use of "Ion-X" is descriptive fair use because the defense is not limited to "so-called ordinary words," and Apple did not use "Ion-X" as a trademark, but, rather, used it in its "descriptive sense" and in good faith. S. App'x at 35. Further, the district court concluded that a reasonable jury could not find a likelihood of confusion as required to show trademark infringement. Judgment entered June 21, 2019. This appeal followed.

### DISCUSSION

We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126-27 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

### I.    *Applicable Law*

Section 43(a) of the Lanham Act prohibits the use in commerce of "any word, term, name, symbol, or device" that "is likely to cause confusion . . . as to the origin, sponsorship or approval" of goods or services. 15 U.S.C. § 1125(a)(1). To prevail on an infringement claim, a plaintiff must prove that (1) it owns a "protectable trademark" and (2) the defendant's mark "is likely to confuse consumers as

4

to the source or sponsorship of [the plaintiff's] product." *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). Likelihood of confusion is determined by the eight-factor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961):

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). The *Polaroid* test is "not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Id.* (quoting *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005)).

## II.    *Application*

The parties dispute whether phrases containing hyphenated words or contractions can be considered descriptive for purposes of the fair use doctrine.[1] We

---

[1]    This Court has not expressly determined whether a contraction like "Ion-X" can be "descriptive" in the fair use context, but other federal courts of appeals have held that hyphenated words and acronyms not found in the dictionary can be considered descriptive for the purposes of fair use. *See Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995) (finding "sweet-tart" to be descriptive); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir. 1993) (finding the acronym "VCR-2" to be descriptive); *cf. Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992) (concluding that "PM" met the "descriptive" classification); *Bernard v. Commerce Drug Co.*, 964 F.2d 1340, 1341 (2d Cir. 1992) (concluding that "Arthriticare" met the "descriptive" classification).

5

need not decide the issue because we affirm the district court's dismissal on the ground that Saxon failed as a matter of law to show a likelihood of confusion.

Saxon alleges that consumers "are likely to be confused as to whether Apple's watch is sponsored or approved by Saxon," or whether Apple is "a conduit for Saxon's chemically strengthened glass products or products made by the Saxon processes." J. App'x at 24. In assessing the likelihood of confusion, the district court concluded that the first four *Polaroid* factors weighed in favor of Apple. Furthermore, as to the fifth factor evaluating "actual confusion" with respect to the marks, the district court noted the contested evidence and viewed it in Saxon's favor, but concluded that the factor was "neutral" and weighed in favor of neither party. S. App'x at 51. Finally, as to the sixth factor regarding bad faith, the district court concluded that, based on the record, Saxon could not establish that Apple acted in bad faith in adopting the term "Ion-X." S. App'x at 51-52.[2]

Applying the *Polaroid* factors, we agree with the district court that there are no genuine issues of material fact as to likelihood of confusion and conclude that Apple is entitled to summary judgment on this basis.

---

[2]     On appeal, Saxon only challenges the district court's application of the first six *Polaroid* factors. Thus, we need not address the final two factors, and, in any event, agree with the district court that both weigh in favor of Apple.

6

First, as to the strength of Saxon's mark, we agree that the mark is both conceptually and commercially weak.[3] The IONEX mark is conceptually weak because, as Saxon's own experts conceded, it is a "descriptive term" that refers to the chemical process by which Saxon strengthens glass. J. App'x at 240. As for commercial strength, the district court properly determined that Saxon's mark was commercially weak because Saxon spends little on advertising, produced no consumer studies linking IONEX to Saxon, produced no media coverage reviewing the IONEX mark, and has sold to only one customer that used the IONEX mark for products that have been released.[4]

Second, as to the similarity of the marks, a court considers "(1) whether the similarity between the two marks is likely to cause confusion and (2) what effect the similarity has upon prospective purchasers." *The Sports Auth., Inc. v. Prime Hosp. Corp.,* 89 F.3d 955, 962 (2d Cir. 1996). Saxon failed to present evidence of likelihood of confusion or any impact upon prospective purchasers. The record shows that the marks appear in different contexts only in close proximity to either the Apple or the

---

[3]     Although Saxon's IONEX mark was granted incontestable status under 15 U.S.C. § 1065, this Court may nonetheless find the mark to be weak. *See Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.,* 991 F.2d 1072, 1078 (2d Cir. 1993).

[4]     Saxon claims that "[s]ales under its IONEX mark include Samsung . . . and Nippon Electric Glass," J. App'x at 3011, but the evidence presented failed to show that these relationships progressed beyond the R&D stage or materialized in a commercially available product bearing the IONEX mark.

Saxon logo or word mark. For example, when Apple uses "Ion-X" on its watches, packaging boxes, or website, the Apple logo appears nearby, thus identifying the watch as an Apple-branded product. Saxon does not use its mark on any actual products, but instead uses IONEX alongside the Saxon name on its packaging labels, invoices, and its website -- places where a consumer would associate the mark with Saxon.

Third, we agree with the district court's determination that the products are not proximate or competitive with each other because Saxon offers glass-strengthening services to businesses, while Apple sells electronic products directly to consumers. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003) ("When the two users of a mark are operating in completely different areas of commerce, consumers are less likely to assume that their similarly branded products come from the same source.").

Fourth, Saxon failed to produce evidence showing any dispute of material fact as to Saxon's plan to enter Apple's market in the "reasonably near future," *id.*, nor was any evidence presented that prospective customers are aware of any such plans. "'Bridging the gap' refers to the likelihood that [Saxon] will enter [Apple's] market in the future, or that consumers will perceive [Saxon] as likely to do so." *Star Indus., Inc.*, 412 F.3d at 387. Although Saxon has previously performed R&D services for Samsung Display and Nippon Electric, those relationships are insufficient to "bridge the gap," as Saxon was not entering Apple's market imminently and consumers were not aware of

8

Saxon's attempt to do so. *See Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991) ("[T]he intent of the prior user to expand . . . *unless known by prospective purchasers*, does not affect the likelihood of confusion."); *see also, e.g., Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 295 (S.D.N.Y. 2012) (finding the gap was not bridged because there was no "concrete expansion plan" to enter defendant's market).

Fifth, as to bad faith, we agree with the district court that Apple produced evidence of its good faith and that Saxon failed to produce any evidence rebutting Apple's evidence or separately demonstrating Apple's bad faith. There is no evidence that Apple tried to capitalize on Saxon's goodwill, and Apple further demonstrated good faith, as "the source of the [Apple Watch] is clearly identified by the prominent display of [Apple's] own trademarks." *Cosmetically Sealed Indus. Inc., v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d. Cir. 1997).

Finally, as to actual confusion, the district court properly viewed the evidence in Saxon's favor and found this factor neutral in light of Saxon's "weak evidence of actual confusion" and Apple's "strong evidence to the contrary." S. App'x at 51; *see Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995) (the issue of actual confusion is "not dispositive of the question of likelihood of confusion").

As this Court has explained, no one factor should be treated as dispositive, *see Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016), and "the district court's findings with regard to each of the *Polaroid* factors are entitled

9

to considerable deference, even on appeals from summary judgment," *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996) (internal quotation marks omitted).  Here, "looking at the products in their totality," we agree that no reasonable jury could find a likelihood of confusion between the Saxon's IONEX mark and Apple's use of the term "Ion-X," as required to support a trademark infringement claim. *Starbucks Corp.*, 588 F.3d at 115.[5]

\* \* \*

We have considered Saxon's remaining arguments on appeal and find them to be without merit.  For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[5]     Saxon's notice of appeal included the exclusion of its expert witnesses, but Saxon has waived such arguments by not presenting them in its opening brief.  *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,* 412 F.3d 418, 428 (2d. Cir. 2005).